James POE, Plaintiff,

v.

MICHAEL TODD COMPANY, Inc., and Michael Todd, Defendants.

United States District Court
S. D. New York.
Feb. 11, 1957.

Schulman, Klein & Stern, New York City, for plaintiff, Solomon A. Klein, New York City, of counsel.

Stillman & Stillman, New York City, for defendants, Louis B. Stillman, New York City, of counsel.

WEINFELD, District Judge.

The plaintiff, a professional writer of screen plays and scripts for motion pictures, seeks a preliminary injunction to enjoin the exhibition of a motion picture entitled "Around the World in 80 Days" based upon the novel by Jules Verne, unless the defendants give him screen play writing credit.

One S. J. Perelman is given sole credit on the film, which currently is being exhibited in various cities throughout the country. The plaintiff contends the screen play is based upon a script prepared by him and that in acordance with a well-established and recognized practice in the motion picture industry he is entitled to credit on the film as well as on all promotional advertising.

That the plaintiff was engaged to and did write some portion of the screen play cannot be seriously disputed. Indeed, the corporate defendant in its answer admits that in May, 1955 it engaged the plaintiff to render services in connection with the screen play at a fixed salary for ten weeks. Plaintiff contends he completed the script in collaboration with the defendant's director-producer, one Farrow, on June 29, 1955. What is in dispute is the portion of the plaintiff's script which went into the final play. Subsequent to June 29, 1955 the defendants engaged S. J. Perelman who made revisions in the dialogue and changes in the script previously prepared by the plaintiff—this the plaintiff concedes, but claims that they were only incidental revisions and additions which did not change the basic structure of his script.

The defendants say they gave and are giving Perelman sole screen credit because he, of all the script writers, made the substantial and major contribution to the ultimate screen play; that it was his changes of dialogue, revisions, eliminations and writing of new scenes which in large measure resulted in the ultimate success of the picture, the concept of which the individual defendant claims credit, as well as credit for important contributions to the script proper. Thus immediately there is a challenge to the plaintiff's contention of a major contribution to the picture.

Other matters are also in dispute. The employment of plaintiff was by oral contract. Upon his examination before trial he made no contention, nor does he appear to do so on this application, that the oral contract included an express undertaking to give him screen credit. He relies, as already noted, upon an alleged established practice in the motion picture industry to give public credit to an author both on the film and in advertising, and contends that the parties intended to observe this practice.

The defendants in resisting plaintiff's plea deny that any agreement, express or implied, was made to give him authorship credit. Additionally they attack his claim that a custom or practice to give screen credits exists in the trade and assert that it is done only when expressly agreed upon; further, they contend that absent a contractual obligation to give screen credit, there is no inherent right in an author thereto, and the producer may, if he sees fit, omit it.

Finally, the plaintiff contends that the issue as to whether he was entitled to screen credit was submitted for arbitration to the Writers Guild of America, West, Inc., which rendered a decision that credits for the pictures were to be given to three persons, the plaintiff, Far-

row, the director-producer, and Perelman. The defendants vigorously deny they ever consented to submit or did submit the matter for arbitration to the Writers Guild. The corporate defendant points out that it resisted membership in the Guild; that its only contact with that body in this matter was when, in response to the Guild's request for information after plaintiff, who was a member, asserted a claim for credit, it (the corporate defendant) notified the Guild of its intention to give sole credit to S. J. Perelman. In submitting this information it set forth the names of others, including that of plaintiff, all of whom it admitted participated "in the early preparation and treatment of the screen play * * * to some extent; though in our [defendant's] opinion there remains a negligible amount of such contribution of ideas or writing in the final edited picture as it will be released for exhibition."

In any event, the defendant denies that the information it sent to the Writers Guild was a contract for or submission to arbitration of any question of screen credit or that it agreed to be bound by this determination. Significantly the defendant points out that if in fact there were such an award under an arbitration agreement it would be enforceable as such and no proceeding of any kind with respect thereto has been taken.

I have pointed out these substantial matters in controversy since obviously they do have a bearing on plaintiff's application. To grant the motion for the requested extraordinary injunctive relief would alter rather than preserve the status quo and yield to the plaintiff the full measure of relief which normally he would be entitled to after a trial on the merits and then only in the event he had successfully carried his burden of proof as to the controverted issues as well as others in the case.[1] Under the circumstances here presented, the granting of the requested relief is not warranted— and indeed in the face of the sharply controverted issues of fact would not be a wise exercise of discretion.

Another factor which militates against the granting of this motion is that although the plaintiff was fully aware the picture was to be released on October 17, 1956 without credit to him and he filed this action on that day, no motion for injunctive relief was made until three months thereafter.

The plaintiff, however, has made a sufficient showing to warrant a prompt trial since if he should sustain his burden of proof the failure to give him credit would constitute irreparable injury. Not only would money damages be difficult to establish, but at best they would hardly compensate for the real injury done. A writer's reputation, which would be greatly enhanced by public credit for authorship of an outstanding picture, is his stock in trade; it is clear that irreparable injury would follow the failure to give him screen credit if in fact he is entitled to it.[2]

Accordingly the denial of the motion is without prejudice to an application for a preference pursuant to Local Calendar Rule 11.

Settle order on notice.

1. Cf. Warner Bros. Pictures, Inc. v. Gittone, 3 Cir., 110 F.2d 292; Richard J. Spitz, Inc. v. Dill, D.C.S.D.N.Y., 140 F. Supp. 947, 949.

2. Cf. Granz v. Harris, 2 Cir, 198 F.2d 585, 588; Paramount Products, Inc. v. Smith, 9 Cir., 91 F.2d 863, certiorari denied 302 U.S. 749, 58 S.Ct. 266, 82 L.Ed. 579.