**HAMBROS BANK, LTD., Individually and on behalf of all the shareholders of Pacific Insurance Company of New York, Plaintiff,**

v.

**Clinton V. MESEROLE, Jr., et al., Defendants.**

**No. 68 Civ. 2763.**

United States District Court
S. D. New York.

July 24, 1968.

Shea, Gallop, Climenko & Gould, New York City, for plaintiff; Sheldon D. Camhy, New York City, of counsel.

Lord, Day & Lord, New York City, for defendant Pacific Ins. Co. of New York and the Individual Defendants; John W. Castles, III, and F. Sedgwick Browne, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Phoenix Assurance Co. of New York; Oliver B. Merrill, Jerome K. Walsh, Jr. and Walsh & Frisch, New York City, of counsel.

METZNER, District Judge:

This is a motion seeking several categories of preliminary injunctive relief. The action arises out of a developing contest for control of defendant Pacific Insurance Company of New York (Pacific) and involves competing public tender offers for large blocks of Pacific stock.

The plaintiff, Hambros Bank Ltd. (Hambros), is a stockholder of Pacific who made a tender offer for enough stock to give it a majority position. Defendant Phoenix Assurance Company of New York (Phoenix) has made a tender offer to purchase all of the outstanding Pacific stock. The remaining defendants are individual officers and directors of Pacific.

The original motion papers sought a temporary injunction restraining Phoenix from purchasing any more Pacific stock, ordering rescission of all prior sales of stock to Phoenix by the other defendants, and directing defendants to refrain from further communications to Pacific stockholders except as ordered by the court. It appears that between the service of the original papers and the return date of the motion Phoenix acquired virtually all of the outstanding shares of Pacific except those owned or controlled by Hambros. This has prompted Hambros to request additional relief, restraining Phoenix from transferring any of the Pacific stock it has already acquired and restraining all of the defendants from effecting any further transactions by virtue of Phoenix's ownership of the stock.

Hambros, since becoming a stockholder of Pacific in September 1966, has sought to increase its stockholdings in Pacific in order to secure a voice in management. Hambros and its associates were partially successful in this effort, so that by May 1968 they held approximately 25% of Pacific's 200,000 shares of common stock. After a proxy fight in May 1968 failed to place any Hambros nominees on Pacific's board of directors, Hambros renewed its efforts to secure an absolute majority of the stock. Meanwhile, the Pacific management concluded arrangements with Phoenix to have Phoenix offer to purchase all of the stock of Pacific at $85

per share. This offer was to be conditional upon Phoenix obtaining at least 51% of the outstanding stock. The bid prices for Pacific stock on the open market at that time varied between $62 and $65.

On June 21, 1968, the Pacific board of directors sent a letter to all stockholders, advising them that the Phoenix offer at $85 was forthcoming early the following week and recommending its acceptance. However, on June 23, Hambros countered, anonymously through a brokerage firm, with a telegram to all stockholders offering to buy 40,000 shares at $95 per share, on a first come, first served basis. By its terms, the Hambros offer was to be "good until filled." This was followed on June 25 by a telegram from management strongly urging the Pacific stockholders "not to be stampeded" by the Hambros offer, advising them that since it was an offer for only 40,000 shares it was "not in the best interest of all the stockholders and therefore should be rejected," and promising that a "letter containing important information" would follow.

On June 30, Hambros directed another telegram to shareholders, revealing itself as the offeror at $95 and placing a July 8 deadline on the offer. Hambros' price was subsequently raised to $100 per share and on July 8 the offer was terminated. Whether as a result of management's June 23 wire or otherwise, only 15,000 shares were tendered in response to the Hambros offer.

Meanwhile, Phoenix was engaged in purchasing or securing commitments to purchase over 114,000 shares, so that when its formal offer at $85 was finally mailed to stockholders on July 2, it represented that it had made commitments for the 51% of Pacific stock upon which its offer was conditional. The letter informed shareholders that as to these commitments the purchase price of 83,-237 shares was $85 and the price of the remaining 31,092 was $95. Apparently, Phoenix has been successful to date in purchasing almost all of the stock of Pa-

cific other than that owned or controlled by Hambros.

In essence, we have here two groups engaged in a battle for control of Pacific. When the smoke clears away, the loser comes into court for help. Charges and countercharges of lack of ethical conduct and fleecing of the innocent stockholders are made.

It is plaintiff's contention that defendants' actions to frustrate plaintiff's attempts to obtain control constituted a fraudulent scheme against the stockholders, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and SEC rule 10b–5, and in breach of the Pacific management's fiduciary duties to its stockholders.

■■ There is no need for elaborate repetition of the well-settled rule that a preliminary injunction is an extraordinary remedy which will be granted only upon a clear showing of probable success on the trial and of irreparable injury to the plaintiff which outweighs any possible injury to the defendants. Societe Comptoir de L'Industrie etc. v. Alexander's Dept. Stores, 299 F.2d 33, 1 A.L. R.2d 752 (2d Cir. 1962). The burden upon a plaintiff seeking a temporary injunction is even heavier where, as here, such relief would in effect grant plaintiff all or a good part of the relief to which it would be entitled after a trial on the merits. See Poe v. Michael Todd Co., 151 F.Supp. 801, 803 (S.D.N.Y. 1957).

■ On the basis of the oral argument and the papers submitted on this motion, I must conclude that plaintiff has failed to make the requisite showing.

The papers leave room for substantial doubt as to the likelihood of success at trial. Defendants vigorously deny all of plaintiff's charges concerning undisclosed transactions among the defendants which were supposedly favorable to the individual defendants. The opposing affidavits raise substantial factual questions as to whether the statements contained in the telegram of June

23 and the Phoenix offer of July 2 were false or misleading and as to whether there were any material omissions therefrom, as plaintiff contends.

■■ Furthermore, even if a violation of rule 10b–5 could be established, it is questionable whether plaintiff, who did not sell any shares to Phoenix, has standing to sue under the rule or to represent, as it claims to, those shareholders who did sell. Standing to sue under rule 10b–5 was originally defined in terms of the plaintiff's status as a purchaser or seller. Thus, in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the court dismissed a derivative suit brought by a minority stockholder, on the grounds that the fraudulent scheme alleged involved a sale of stock by a controlling shareholder, with the corporation on whose behalf suit was brought being neither a purchaser nor a seller. Although there have been some signs of softening of this original formulation, it would seem that a plaintiff under rule 10b–5 must still have been involved in some way in a securities transaction in connection with which he claims there was a fraud. Otherwise, the requirement that a 10b–5 violation be "in connection with" a sale of securities would have little meaning.

In Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), upon which plaintiff relies, the plaintiff was forced to give up his stock by means of the alleged fraudulent scheme, even though he was not taken in by it and refused to sell. In those unique circumstances, he was held to have been a "forced seller" under rule 10b–5. Similarly, in Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967), nonselling shareholders were given standing to seek an injunction against future manipulative practices upon a showing that defendants were seeking to force them to sell their stock at depressed prices. Plaintiff here has had no desire to sell its Pacific stock and does not claim it has been forced to do so by any alleged scheme of the defendants. If it desires to sell, it will receive a price of $85 for stock which cost about $60.

On the common law claim, defendants maintain that in urging stockholders to reject the Hambros offer and recommending acceptance of the Phoenix offer the Pacific management acted not in violation of its fiduciary duty, but in allegiance thereto. They argue persuasively that the Hambros offer was not in the best interests of all the shareholders because only the holders of 40,000 shares could benefit by the $95 price and once Hambros had obtained control, there would be little demand for the remaining shares. The Phoenix offer, on the other hand, guaranteed a price of $85 to everyone.

■ Plaintiff has also failed to show that it will be irreparably injured by failure to grant a temporary injunction. The only legitimate purpose of such an injunction is to maintain the status quo between the parties in order to prevent such injury, *pendente lite*. Much of what plaintiff seeks would not preserve the status quo, but would upset it, causing injury to innocent shareholders who have sold to Phoenix at $85. Much of the alleged injury of which plaintiff complains has already been done. The only future injury plaintiff can identify is its charge that Phoenix intends to merge Pacific's business into the Continental Insurance Company group, leaving plaintiff with a substantial investment in a dormant company. But even if this charge were based on more than mere conjecture, it appears that the only possible injury would be a decline in the value of plaintiff's investment. If plaintiff can prove all it alleges on a trial, money damages will certainly be adequate to repair any such injury.

Motion denied. So ordered.