**TWENTIETH CENTURY FOX FILM
CORP., Plaintiff,**

v.

**Charles M. LEWIS et al., Defendants.**

**No. 71 Civ. 1302.**

United States District Court,
S. D. New York.

May 5, 1971.

Royall, Koegel & Wells, by Stanley Godofsky, New York City, for plaintiff.

Shea, Gallop, Climenko & Gould, by Bruce A. Hecker and Roland H. Alenstein, New York City, for defendants.

MOTLEY, District Judge.

*Twentieth Century Fox Application for a Preliminary Injunction Findings of Fact and Conclusions of Law*

This is an application for a preliminary injunction brought by Twentieth Century-Fox Film Corporation (TCF) pursuant to Fed.R.Civ.P. 65(a) to enjoin defendant, "Protective Committee for the Benefit of Twentieth Century Fox" (the Committee) and other specifically named members of the Committee from (1) soliciting proxies from shareholders of plaintiff's common stock until (a) Schedule 14B statements [1] found by

---

1. A schedule 14B (17 C.F.R. 240.14a–102) is a document which the proxy rules and regulations, e. g., Rule 14a–11(c) (17 C.F.R. § 240.14a–11(c), promulgated by the SEC pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78aa,

the court to comply with the applicable rules of the Securities and Exchange Commission are filed by defendants with said Commission and (b) until a written proxy statement complying with the requirements of Rule 14a–3, 17 C.F.R. § 240.14a–1, has been furnished to plaintiff's shareholders; and (2) voting at any meeting of shareholders any of plaintiff's common stock represented by proxies heretofore given to defendants.

The application is brought in the context of an impending heated proxy contest between TCF management and dissatisfied Committee members who seek to challenge management in the election noticed for May 18, 1971. The underlying complaint charges defendants with having violated the Securities Exchange Act of 1934, § 14(a), 15 U.S.C. § 78n(a).[2] In particular, they are charged with having engaged in solicitation of TCF shareholders without providing TCF shareholders with written proxies or without filing accurate schedule 14B's. It is alleged that the schedule 14B's filed by defendants are false, misleading and inaccurate in the following ways: 1) they fail to disclose the names of all participants with defendants in the solicitation; 2) they fail to reveal the sources of the $100,000 which the Committee has said it proposes to contribute "in furtherance of its goals" or the amount which defendant Lewis (a key Committee member) intends to expend in his solicitation;[3] 3) they fail to reveal

the nature and extent of certain secret agreements between defendants and undisclosed third persons relative to (a) the manner in which the solicited proxies will be used (b) promises of future employment in exchange for such solicitation and (c) reimbursement for expenses incurred through solicitation; 4) they fail to reveal defendants' true motives in forming the Committee, their aims and objectives; and 5) they fail to reveal the extent of Mr. and Mrs. Lewis' holdings of TCF stock. In short, defendants are charged literally with not having revealed "everything" about their interests in TCF in their 14B's.

Defendants counter these allegations by denying that they have engaged in proxy solicitations of TCF shareholders to date; that, therefore, the time for provision of written proxies has not yet arisen; that any 14B's filed have been accurate insofar as is possible, and if subsequent events require it, will be supplemented and updated; and that they are not acting on behalf of any undisclosed principals who should either file 14B's themselves or be denominated in 14B's already filed.

■ A preliminary injunction, an extraordinary remedy, will issue only where the movant has made a clear showing of probable success on the trial, (Clairol Incorporated by Gillette Company, 389 F. 2d 264 (2d Cir. 1968); Societe Comptoir De L'Industrie, etc. v. Alexander's Department Store, Inc., 299 F.2d 33 (2d

---

et seq. require to be filed by all participants involved in the solicitation of proxies in connection with the election of officers at any annual or special meeting of shareholders. In general, it requires information relative to the identity and employment record of a participant; his past record as regards proxy contests; his interests in the issuer's securities; and the time and circumstances surrounding his decision to become a participant in the proxy contest and any other information relevant to that decision.

2. That provision provides in pertinent part:
   "It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate

commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title."

3. The court notes that since the filing of this suit, additional statements of intention to contribute to and participate in Committee efforts have been filed by sufficient persons to account for at least $95,000 of the alluded to sum.

Cir. 1962)), and of irreparable injury which he would suffer absent such an injunction which is greater than that defendant will suffer by its issuance. Checker Motors Corp. v. Chrysler Corporation, 405 F.2d 319 (2d Cir.) cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); Hambros Bank, Ltd. v. Meserole, 287 F.Supp. 69 (S.D. N.Y.1968).

■ Upon the papers before it and upon the oral argument, this court has concluded for the reasons to follow that plaintiff has not sustained its burden as detailed above and the application is, therefore, denied.

Plaintiff relies upon three types of allegations regarding activities of the Committee from which allegations the court is asked to infer that defendants have engaged in the forbidden proxy solicitations on behalf of secret principals, and from which the court is asked to conclude that the schedule 14B's are likely to be false and misleading. The first class of allegations relates to alleged disproportions between the TCF stock holdings of some Committee members and the amounts of money they have stated in their 14B's that they are prepared to spend in the impending contest. The "insubstantial" interests in TCF compared to these projected "sizeable" contributions to the proxy fight gives rise, plaintiffs argue, to a strong inference that said persons are entering the proxy contest for ulterior reasons. For example, it is pointed out that defendant Powell did not as of record or beneficially claim any ownership of TCF stock at the time of filing his 14B, yet he stated that it was his intention to contribute approximately $5,000 in furtherance of the proxy solicitation campaign. Since the time of filing, he has purchased some 600 shares of TCF stock, but this holding is still argued to be insubstantial when compared to funds and energy Powell is expected to expend in the Committee's behalf. Defendant Lewis, it is stated, owns 1,200 shares with his wife according to his 14B, yet he stated therein that he would expend "whatever is necessary" to gain control. Defendant Alexander, reputed leader of the Committee owns, according to his 14B, approximately 2,101 shares, yet he has stated in his 14B that he expects to expend up to $50,000 in the contest. The fact that Alexander sold his entire TCF holding (some 5,000 shares) in late February, 1971, and repurchased the presently held shares in mid-March, 1971, only three days after defendants Lewis and Powell formed the Committee is also averted to as cause for suspicion. Defendant Kahn's holding of 5,000 shares purchased shortly before the late March filing of his 14B is compared to his pledge to contribute some $20,000 to the contest. There are other examples which might be cited, but these convey their tenor.

The second class of allegations made in support of the application relates to certain relationships between some of the individual defendants and other more substantial shareholders, who, it is asserted, have strong interests in gaining control of TCF. The Harry Brandt family, reputed owners of substantial interests in Trans-Lux Corporation and the Brandt Theatre Circuit, and owners of some 200,000 shares of TCF stock, are alleged to be behind the Committee. Harry Brandt is alleged to be a close relative of Mrs. Lewis and his son, Richard, is alleged to have been acting with Lewis and Powell to persuade TCF to give them places on its Board prior to formation of the Committee. Mr. Lewis is a partner in a company in which alleged undisclosed clients are said to own upwards of 100,000 shares of TCF. Mr. Powell is alleged to be acting perhaps on behalf of Max Factor, an alleged client of his, holding large amounts of TCF stock. Mr. Alexander, President to Sun Chemical Company, an alleged large holder of TCF stock, and counsel to other clients alleged to hold TCF stock, is speculated to be acting on their behalf. It is further speculated that these undisclosed persons are making financial contributions to the Committee.

The third class of allegations made in support of the application relates to

certain conversations and written communications between certain plaintiffs and defendants, in the course of which, it is asserted, defendants explicitly revealed that they were only "representatives" of others. In support of this, plaintiff produces sworn statements by certain members of TCF's management and executive committee to the effect that, for example, at a meeting with Mr. Powell, Mr. Lewis and Richard Brandt (son of Harry Brandt), they (the aforementioned) represented that they were acting on behalf of shareholders holding one million shares of TCF stock or more. (All the 14B's now filed in support of the Committee only account for some 60,000 shares of stock, plaintiff points out.) It is further alleged that they asked the executive committee to recommend the nomination of five directors to be selected by them (Lewis, Powell and Brandt) for election to the Board. These TCF committeemen then requested of defendants that they write letters stating the names of the persons on whose behalf they were acting, it is alleged, and this was done. The letters revealed that Lewis, Powell and Brandt were acting on behalf of a group controlling minimum of some 300,000 shares of stock. At another meeting between the parties plaintiff says that Lewis stated that in order to obviate any possible antitrust considerations which might arise from Brandt's serving on the Board, that he, Lewis, could informally represent Brandt interests there. Plaintiff intimates that defendant Powell's interest in TCF is most likely prompted by Brandt group promises that if they gain control of TCF, they will make Powell chairman of TCF's Board and its chief executive officer. Mr. Lewis may be given an executive position as well, they claim. A *Wall Street Journal* article in which Mr. Brandt is reported to be disaffected with current management and to be backing the Committee is also cited. A number of statements made in the presence of plaintiffs by defendant Alexander concerning his "representing" large shareholders of TCF stock are also noted.

The court finds that these allegations are too circumstantial and speculative in nature to sustain a finding by this court of "clear probability of success" upon the trial. On the contrary, the court thinks that it may prove difficult indeed to establish these claims upon trial, and that the chances are at least even that such an offer of proof may fail. This is particularly true in view of defendants' categorical denials that they have engaged in any proxy solicitation to date; their denials that the statements are inaccurate or misleading; and their explanations of the conversations and letters previously averted to (they explain that any such statements relative to the votes they carried were made in the course of negotiations between them and management and were really in the nature of representations based upon expectation rather than upon procured commitments for the voting of proxies from TCF shareholders). So the first reason for denying the application is that the allegations made before this court are highly speculative. They will be difficult of proof on trial.

But even if this court were to find that the facts had been drawn with specificity here, there would still remain substantial questions of law as to the scope and content of disclosure required in 14B's. Plaintiff has produced no case for the court's inspection in which such broad disclosure as they seek here has been required in a 14B. This is not to say, necessarily, that some or even most of the things plaintiff claims are required should not be included in 14B's, but plaintiff has not alleged and documented the necessity for disclosure of most of the types of information they seek here. Some of the information plaintiff seeks to have disclosed may be mere exchanges of views made between members of the opposition. Not every conversation held to try to elicit support may be a "solicitation." In this connection, the court thinks it is significant that the Securities Exchange Commission, which has these statements before it and is apprised of plaintiff's contentions in reference there-

to, has taken no action to require further clarification. Although this does not mean that no violation has occurred, it may indicate that the SEC finds the schedules adequate for its purposes. General Time Corporation v. Talley Industries, Inc., 403 F.2d 159, 162 (2d Cir. 1968) cert. denied, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969), and the cases cited therein; McConnell v. Lucht, 320 F.Supp. 1162, 1166 (S.D. N.Y.1970); Armour and Company v. General Host Corporation, 296 F.Supp. 470 (S.D.N.Y.1969). Furthermore, before a violation of Section 14(a), 15 U.S.C. § 78n(a) of the Act can be established, the courts have held that it must be shown that the alleged misleading statement is a material one. The Second Circuit has defined the test of materiality thusly:

" . . . whether, taking a properly realistic view, there is a substantial likelihood that the misstatement or omission may have led a stockholder to grant a proxy to the solicitor or to withhold one from the other side, whereas in the absence of this he would have taken a contrary course." General Time Corp. v. Talley Industries, Inc., supra at 162.

Plaintiff says that the failure of defendants in their 14B's to disclose the identity or relationship between persons sponsoring a solicitation is a material omission. This is undoubtedly true, but as was stated before, there is nothing but speculation in the papers before this court as to whether such surreptitious solicitation has even occurred. Moreover, since no proxy materials have yet been sent out by defendants to TCF shareholders, it seems to this court a bit premature to argue that these 14B schedules may mislead them to plaintiff's irreparable harm. Such schedules are on public file with the SEC but have not been circulated by defendants to shareholders. This takes on particular relevance in light of this court's view that "the past record of the management, the market performance of the stock, the lustre of the opposition, and the recom-

mendations of brokers and investment advisers based on such considerations, are likely to be much more influential than tired-eye scrutiny of proxy . . . [materials]". General Time Corp. v. Talley Industries, Inc., supra at 162. It may be that whatever defects alleged here may be cured by the final materials submitted to the shareholders and no one may be mislead. Additionally in view of the active nature of the contest here, it seems unlikely to this court that the shareholders will not be fully exposed to the issues involved. See McConnell v. Lucht, supra at 1165.

Most importantly, the court finds that plaintiff has failed to demonstrate such irreparable injury as would warrant issuance of an injunction here. Plaintiff's claimed irreparable injury is never specified. It is argued only that a violation of the disclosure provisions establishes irreparable injury as a matter of law, citing Studebaker Corporation v. Gittlin, 360 F.2d 692 (2d Cir. 1966). Even assuming that is so, in view of the court's above finding concerning the speculative nature of the charges in the case, and plaintiff's consequent failure to present a sufficient quantum of proof to this court to justify a finding of likely success upon trial by plaintiff, and in view of the open questions of law concerning the scope of disclosure 14B's contemplate and the materiality of some of the claimed omissions, plaintiff has, nevertheless, failed to sustain its burden. Balanced against this tenuous showing, are defendant's claims that an injunction issuing now would injure them still more than plaintiff in that defendants 1) would be unable to convey their views or literature to TCF shareholders prior to the election (which election, incidentally, plaintiff does not seek to stay); 2) would be required to expend large blocks of time in preparing documents to meet with the court's directives regarding 14B's and be forced to the expense of having lengthy evidentiary hearings on their accuracy; and 3) would be at least partially discredited in the eyes of the shareholders who, being ignorant of the

law, would view the injunction as a favorable adjudication of plaintiff's claim. "Just how this result could be remedied in the event it was found at a full hearing that the claims of the plaintiff were unfounded is not readily perceptible to this court." Sherman v. Posner, 266 F.Supp. 871, 874 (S.D.N.Y. 1966).

The court finds that at this point defendants would be injured more by the injunction than plaintiff aided. Thus weighing all the factors and in the exercise of its discretion, the court denies the application.

So ordered.