**UNITED FARM WORKERS NATIONAL UNION, an unincorporated association registered in California,**

v.

**SLOAN'S SUPERMARKETS, INC., Defendants.**

**No. 72 Civ. 4504.**

United States District Court,
S. D. New York.

Dec. 20, 1972.

Philip G. Schrag, New York City, for plaintiff.

Berger, Kramer & Levenson, New York City, for defendants.

PIERCE, District Judge.

### OPINION AND ORDER

In this action, plaintiff United Farm Workers National Union alleges that defendant Sloan's Supermarkets, Inc., has misused plaintiff's duly registered certification mark, the Aztec Eagle, in viola-tion of federal trademark and unfair competition laws, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a). Essentially, Sloan's is charged with displaying and selling non-UFW lettuce in bins carrying UFW identification. Plaintiff seeks, ultimately, a permanent injunction restraining defendant from using plaintiff's mark in connection with the sale of non-UFW lettuce, compensatory and punitive damages, and costs.

Plaintiff has moved for a preliminary injunction restraining the same acts, alleging that defendant's "palming-off" of non-UFW lettuce has and will result in immediate, irreparable injury by frustrating its consumer boycott of non-UFW lettuce and thereby harming its current efforts to organize West Coast laborers and to negotiate exclusive labor contracts with West Coast lettuce growers; and by deceiving the public. Plaintiff also asserts the likelihood of success on the merits.

The motion was heard on November 6, 1972, and at that time the parties agreed to a decision by the Court on submission of papers and affidavits. The Court indicated that if, after study of the documents, oral argument or a hearing seemed necessary, the Court would so direct. The Court, having studied the submissions of both parties, finds that there is little dispute with regard to the facts and that oral testimony is unnecessary on the motion. Cf. Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970).

In its affidavits, plaintiff cites four instances—on September 20, 1972, October 13, 1972, and two on October 18, 1972—when members of the UFW Boycott Committee discovered circumstances in four different Sloan's retail markets which led them to believe that the defendant was selling non-UFW lettuce as UFW lettuce by displaying the Aztec Eagle, or a similar designation, at or near non-UFW lettuce.

Defendant admits that on two of these occasions, plaintiff's representatives were correct, but asserts that the palming-off was the result of mistake and

misunderstanding on the part of local retail employees and that such errors were corrected immediately. With regard to the other two occasions, Sloan's says it has investigated and that what the Union checkers observed was misperceived. The Court notes that at least two of the discoveries were facilitated by Sloan's policy of allowing persons who inquire about the source of its lettuce to inspect its storage areas.

Sloan's asserts that because lettuce is a highly perishable item, its practice has been to buy from a number of different sources and to refill its lettuce bins as necessary, without regard to identifying the source at all. It asserts that when the UFW made Sloan's management aware of the Union's objectives, prior to the events here complained of, the management determined to cooperate with the UFW and to make every effort to identify at the point of sale both UFW lettuce and the lettuce picked on farms employing members of the competing Teamsters' Union. Defendant asserts that instructions to this effect were given to each of its Produce Managers in each of its 19 Manhattan retail outlets prior to September 20, 1972, and again, after the commencement of this action.

The Court notes that Sloan's also asserts that since the inception of this action, the focus of the UFW demand has changed from identification of its lettuce, to exclusive dealing in its lettuce. It is important to state here that plaintiff is not in this Court alleging that defendant has refused to deal exclusively, nor is the defendant here contesting such a demand. This is not an issue in this proceeding. The issue here is whether or not the UFW has made a showing on its motion for a preliminary injunction sufficient to justify enjoining Sloan's from displaying and selling lettuce from other sources under the UFW mark.

## FINDINGS OF FACT

1. Plaintiff owns a certification mark, duly registered with the U. S. Patent Office on March 14, 1972, which is protected by federal law. 15 U.S.C. § 1054.

2. Plaintiff is presently engaged in a consumer boycott of western iceberg lettuce grown on farms where the labor force is either non-union or non-UFW union (the Teamsters' being the chief union competitor).

3. The thrust of the boycott is to encourage consumers to buy only lettuce which has been picked by UFW members.

4. Such boycott has attracted the attention and support of at least 37,000 residents of Manhattan, witnessed by their signatures on Boycott pledges.

5. Each grower who employs UFW labor is authorized to use the Union mark on his shipping boxes; and such mark on the boxes is the only means of distinguishing UFW iceberg lettuce from other iceberg lettuce.

6. In early September of 1972, persons representing themselves as interested consumers asked for and were granted a meeting with the Produce Supervisor for Sloan's Supermarkets, Inc. The purpose of the meeting was to explain the boycott to Sloan's and to solicit its cooperation in identifying UFW lettuce for sympathetic consumers in its retail outlets.

7. Sloan's indicated it would cooperate and the Produce Supervisor instructed the Produce Manager in each of its 19 Manhattan markets to identify UFW lettuce at the point of sale; and to identify the competing union's lettuce at the point of sale; and if both were on sale at the same time, to separate the displays.

8. Sloan's decision to cooperate came from an entirely believable motive: to protect its own business reputation and position by assisting its customers in identifying the controversial lettuce; and by attempting to deal fairly, down the middle, with regard to its relations with both unions.

9. Thereafter—between the beginning of September and the filing of this lawsuit on October 24, 1972—members

of the Boycott Committee on two different occasions, in two different markets in Manhattan, found Sloan's local personnel mixing lettuce in display bins and apparently selling non-UFW lettuce under the UFW mark.

10. During the same period, Boycott Committee members found an instance in a third store where circumstances in the store room seemed to indicate the same offense.

11. And during the same period, Boycott Committee members found one retail employee who they believed told them that he had been instructed to deliberately mix up the lettuce.

12. Plaintiffs did not bring these four instances to the attention of Sloan's management, but instead instituted this lawsuit.

13. After these four instances were brought to the attention of the Produce Supervisor by virtue of this lawsuit, he again instructed his Produce Managers to make every effort to keep the lettuce separate and to identify the source, by detaching the identifying mark from the shipping boxes and posting it prominently at the bin where the lettuce is sold.

14. Since that time, Sloan's has also caused to be printed, for use in its stores, signs keyed with different colors identifying each union's lettuce.

15. The Court concludes that Sloan's was and is acting in good faith and is attempting to facilitate the purposes and needs of both its customers and of the UFW, while protecting its own considerable interest in peaceful relations with all labor unions.

16. Each of the four instances cited by plaintiff was the result of human error and the inevitable result of a change in lettuce handling practices.

17. A deliberate, malicious effort on the part of Sloan's to frustrate UFW goals and/or the desires of its UFW-supporting customers has not been shown; nor do the four instances reported provide any support for the theory that Sloan's is somehow capitalizing on the boycott by "palming-off" lettuce from other sources.

## CONCLUSIONS OF LAW

■ Before a preliminary injunction will issue, the moving party must demonstrate the likelihood that he will ultimately prevail upon the merits, and that he will suffer greater irreparable injury from denial of injunctive relief than any hardship to the opposing party from the granting of such relief. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); Twentieth Century Fox Film Corp. v. Lewis, 334 F.Supp. 1398 (S.D.N.Y. 1971); Abramson v. Nytronics, Inc., 312 F.Supp. 519 (S.D.N.Y. 1970).

■ This Court holds that the plaintiff has not made a showing of immediate, irreparable injury strong enough to justify the extraordinary remedy of a preliminary injunction; and that the harm to defendant by the issuance of an injunction, at this stage in the proceedings, would be considerable.

Assuming, *arguendo*, that the actions found to have been committed are violations of federal trademark and unfair competition laws; and granting that a pervasive pattern of such acts, if proved, would result in irreparable harm; it is the opinion of this Court that any such harm shown is thus far neither certain or great. See Federal Maritime Comm. v. Atlantic & Gulf/Panama Canal Zone, 241 F.Supp. 766, 781 (S.D.N.Y.1965). The possibility of a few instances of consumer confusion is not enough. See Arco Fuel Oil Co., Inc. v. Atlantic Richfield Company, 427 F.2d 517, 519 (2d Cir. 1970).

Balanced against the minimal harm suffered thus far by the plaintiff, as manifested by the four instances cited, there are the following factors to be considered with respect to the defendant's position. The defendant has acted in good faith—bolstered by its own best

business interest—and has now taken even further steps in an attempt to stop the harm from reoccurring. Under these circumstances, where the defendant has simply inadvertently misstepped in its attempt to comply with plaintiff's request, and has acted to avoid such mistakes in the future, and there seems to be little likelihood of significant repetition during the pendency of this action, a preliminary injunction is not indicated. See Cortright v. Resor, 447 F.2d 245, 254 (2d Cir. 1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972); Farnum v. International Ass'n of Machinists, 161 F.Supp. 391 (S.D.N. Y.), cert. denied, 357 U.S. 916, 78 S.Ct. 1364, 2 L.Ed.2d 1363 (1958).

The mere announcement to the public that Sloan's had been preliminarily enjoined in this case would convey an incorrect impression of the defendant's position with regard to the plaintiff union; would misrepresent its good faith efforts; and would likely do considerable injury to its general business reputation which is not presently justified by the record.

■ The Court is cognizant of the rule that a preliminary injunction is not precluded merely because the action complained of has ceased, or because it was inadvertent, or because the defendant has sworn it will not happen again, or because the defendant might suffer some harm from the injunction. Issuance might still be justified if it were necessary to stabilize the situation. But, here, there is reason to believe that Sloan's is well motivated to police the identification of lettuce in its retail markets, thereby maintaining the status quo, without the supervision of the Court. In fact, issuance of an injunction would tend to disturb the status quo.

The plaintiff is not expected to suffer even small negligent harms forever if its legal position should be ultimately sustained upon trial of the merits. All that this Court holds now is that the balance of the hardships and the circumstances *do not justify a preliminary injunction* at this time, and thus, plaintiff's motion is denied.

So ordered.