**CRIME CONTROL, INC., Plaintiff,**

v.

**CRIME CONTROL, INC., Defendant.**

**Civ. A. No. 83–2212.**

United States District Court,
District of Columbia.

April 12, 1984.

John W. Karr, Washington, D.C., for plaintiff.

Philip L. Cohan, Donald D. Evenson and Ryan M. Fountain, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, District Judge.

The plaintiff seeks a declaratory judgment and injunction under the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"). The Court heard oral argument on the plaintiff's motion for preliminary injunction on October 27, 1983. At the plaintiff's request, the Court stayed determination on that motion to give the parties an opportunity to resolve their difficulties informally.

The Court has now been informed that these efforts have floundered. Accordingly, the Court has reviewed the memoranda and affidavits submitted by the parties and the arguments of counsel in open court. For reasons that are explained below, the Court grants the plaintiff's motion for preliminary injunction. The following discussion constitutes the Court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

## BACKGROUND

The plaintiff is a private corporation that has conducted business under the name Crime Control since 1969 in the District of Columbia, Maryland and Virginia. It designs, markets, installs and maintains electronic security systems. In October 1982, the United States Patent and Trademark Office registered the name "Crime Control" as plaintiff's trademark.

The defendant is an Indiana corporation, organized in 1977, that purchased the local (Maryland) Beltway Alarm Company in 1980. At that time it began soliciting lease agreements for security alarm systems in Maryland and the District of Columbia. The defendant subsequently expanded its operations in the Washington, D.C. area by acquiring other alarm companies, including Seaboard Service Systems of Beltsville, Maryland, and Bur-Tel Security of Alexandria, Virginia.

■ For a short time after it began doing business in Maryland and the District the defendant used a lease agreement that identified the lessor as "Beltway Alarm Company, Division of Crime Control, Inc. (an Indiana corp.)." That form has been replaced by another in which the lessor is referred to only as "Beltway Alarm Company." In several other respects, however, the defendant continues to hold itself out to the public in the Washington, D.C. area as Crime Control.[1] In October of 1983 the defendant issued press releases under the name Crime Control that described the defendant as "one of the fastest growing security alarm companies in the nation [with] regional offices in Baltimore-Washington, D.C." The defendant's most recent annual report, moreover, represents that the defendant Crime Control maintains a regional center with 113 employees in the

---

1. The fact that a defendant alleges to have ceased the infringing activities does not preclude issuance of a preliminary injunction. *United States v. Oregon State Medical Society,* 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952); *United Farm Workers Nat. Union v. Sloan's Supermarkets, Inc.,* 352 F.Supp. 1025, 1029 (S.D.N.Y.1972).

Washington, D.C. area. In addition, the defendant's advertisements under the name Crime Control in trade magazines indicate that the defendant has a regional operation in the Washington, D.C. area. The defendant's stock has been advertised in *The Washington Post, Baltimore Evening Sun,* and *Wall Street Journal* under the name Crime Control.

The plaintiff has documented the confusion created by the defendant's use of the name. Instances of confusion include confusion of the two companies by an individual then contemplating installation of one of plaintiff's security systems. Confusion has occurred on the parts of the City of Baltimore officials responsible for soliciting bids and creditors of defendant's who have refused to extend credit to plaintiff because of defendant's poor credit rating. The plaintiff has put in affidavits and other documentation of confusion among other potential customers and suppliers.

DISCUSSION

■ Plaintiff invokes the Lanham Act to enjoin the defendant's use of the plaintiff's trademark in the plaintiff's area of operation. The case is now on motion for preliminary injunction, thus presently governed by the standards enunciated in *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C.Cir.1958). Under *Virginia Petroleum Jobbers,* the plaintiff must show that it is likely to succeed on the merits, that it would be irreparably injured if no injunction were granted, that the harm issuance of the preliminary injunction might cause the defendant would not outweigh any benefit to the plaintiff, and that the public interest would be served by its issuance. *Id.* at 925.

*Irreparable Injury*

The plaintiff has shown that it is likely to suffer irreparable injury pending trial on the merits as required by *Virginia Petroleum Jobbers.* As discussed above, the plaintiff has documented to the Court's satisfaction repeated instances in which customers, suppliers and others have confused the two companies. Such confusion sup-

ports a finding of irreparable injury. *See Maidenform, Inc. v. Munsingwear, Inc.,* 195 USPQ 297, 302 (S.D.N.Y.1977); *McLeod v. Hosmer-Dorrance, Inc.,* 192 USPQ 683, 686 (N.D.Cal.1976); *Elcon Mfg. Co. v. Elcon Mfg. Co.,* 132 F.Supp. 769, 771 (E.D.N.Y.1955). Where confusion is demonstrated and is likely to continue, irreparable injury to good will and loss of trade are likely. *See Telfal, S.A. v. Products International Co.,* 186 USPQ 545, 548 (D.N.J.1975), *aff'd,* 529 F.2d 495 (3d Cir. 1976); *Diagnostics & Designs, Inc. v. Waverly Beauty Products, Inc.,* 185 USPQ 513, 514 (M.D.Cal.1973); *George Washington Mint, Inc. v. Washington Mint, Inc.,* 349 F.Supp. 255 (S.D.N.Y.1972). Where the marks, as here, are identical, the likelihood of continued confusion is clear and this satisfies the irreparable injury requirement. *See P. Daussa Corp. v. Sutton Cosmetics (P.R.), Inc.,* 462 F.2d 134, 136 (2d Cir.1972); *McLeod v. Hosmer-Dorrance, Inc.,* 192 USPQ at 685.

*Likelihood of Success*

To obtain a preliminary injunction, the plaintiff must demonstrate that it is likely to succeed in the trial on the merits. *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d at 925. Because the plaintiff is the undisputed owner of the registered trademark, the likelihood of the plaintiff's succeeding on the merits of the case is strong. *See Pic Design Corp. v. Bearings Specialty Co.,* 436 F.2d 804, 807 (1st Cir. 1971); *Scientific Applications, Inc. v. Energy Conservation Corp.,* 436 F.Supp. 354, 361 (N.D.Ga.1977); *Rubber Specialty, Inc. v. Sneaker Circus, Inc.,* 195 USPQ 798, 801 (S.D.Fla.1977).

The question of whether the plaintiff is likely to prevail on the merits of its Lanham Act claim also turns on whether the buying public is likely to believe that defendant's services come from the same source, or are affiliated with the trademark owner. *Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 639 (D.C.Cir.1982). Where the marks are identical and the record contains evidence showing the businesses are so related that they are likely to be confused or

have actually been confused, then success on the merits is likely. *See id.* at 639–40.

*Balancing the Equities*

The Court also finds that balancing the respective hardship that would be caused to the defendant by the Court's granting the injunction against the hardship that would be caused by the Court's denial of the injunction points to the granting of the injunction as the most equitable course of action. The defendant is a large and expanding nationwide company newly arrived in this area. The plaintiff is an older, smaller company, strictly local in operations. Requiring the defendant to refrain from all use of the Crime Control name in this area would undoubtedly result in some inconvenience and expense to the defendant.[2] By contrast, however, permitting the defendant to go on using the Crime Control name pending a trial on the merits is likely to cause substantial damage to the plaintiff and could actually place the continued existence of the corporate plaintiff in jeopardy. A balancing of the equities thus weighs in favor of the injunction.

*Public Policy*

The Court must also consider the interests of third parties in deciding a motion for preliminary injunction. *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d at 925. The buying public has an interest in differentiating among the companies offering security systems. The public has a right not to be deceived or confused. *See Corning Glass Works v. Jeannette Glass Co.,* 308 F.Supp. 1321 (S.D.N.Y.), *aff'd,* 432 F.2d 784 (2d Cir.1970). The public interest thus lends weight to the plaintiff's position.

For the foregoing reasons the Court has determined that this is an appropriate case for the issuance of a preliminary injunction.

ORDER GRANTING
PRELIMINARY INJUNCTION

Upon consideration of the plaintiff's motion for preliminary injunction, the defendant's opposition thereto, the memoranda submitted by the parties and the oral arguments of the parties in open Court, it is by the Court this 12th day of April, 1984,

ORDERED that the plaintiff's motion for preliminary injunction be, and hereby is, granted; and it is further

ORDERED that the defendant Crime Control, Inc. (an Indiana corporation) shall make no use nor cause use to be made by its agents, servants, employees, or any other person in active concert and participation with it of the name Crime Control in Washington, D.C., Maryland or Virginia.

---

2. It is noted that this injunction will simply preserve the status quo. This is to say it will maintain the state of affairs that existed before the defendant began using the plaintiff's trademark in this area. *See Tanner Motor Livery,*

*Ltd. v. Avis, Inc.,* 316 F.2d 804, 809 (9th Cir. 1963); *Westinghouse Electric Corp. v. Free Sewing Machine Co.,* 256 F.2d 806, 808 (7th Cir. 1958).