929 F.Supp. 473 (1996)
MALARKEY-TAYLOR ASSOCIATES, INC. and CommunicationsNOW, Inc., Plaintiffs,
v.
CELLULAR TELECOMMUNICATIONS INDUSTRY ASSOCIATION, Defendant.
Civil Action No. 96-1231 PLF.
United States District Court, District of Columbia.
June 21, 1996.
*474 Roger A. Klein and Robert L. Green, Jr., Howrey & Simon, Washington, DC, for plaintiffs.
Theodore Case Whitehouse, Willkie Farr Gallagher, Washington, DC, for defendant.

OPINION AND ORDER
PAUL L. FRIEDMAN, District Judge.
Malarkey-Taylor Associates, Inc. brought this action for trademark infringement to its mark "WirelessNOW" and, along with CommunicationsNOW, for unfair competition, pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1125. It seeks a preliminary injunction *475 against the Cellular Telecommunication Industry Association's use of the mark "Go Wireless Now!" The Court heard oral argument on plaintiff's application for a preliminary injunction on June 11, 1996.
For the reasons stated in this Memorandum Opinion, the Court grants Malarkey-Taylor's application and enjoins the Cellular Telecommunication Industry Association from (1) using MTA's trademark, WirelessNOW; (2) using the term Go Wireless Now! in any form, including, but not limited to, use connected to on-line information services relating in whole, or in part, to the wireless telecommunications industry; and (3) offering for sale, selling, or advertising the sale of or offering to provide access, providing access or advertising access to, on-line information services that use or incorporate the term Go Wireless Now!

BACKGROUND
Plaintiff Malarkey-Taylor Associates, Inc., ("MTA") is a consulting firm for the wireless, cable television and satellite industries. Plaintiff CommunicationsNOW is a subsidiary of MTA that provides on-line information through its WirelessNOW service. Starting in April, 1995, plaintiffs offered subscribers to the WirelessNOW service access to an electronic bulletin board containing wireless industry news, data and information. MTA has promoted WirelessNOW by distributing brochures containing the WirelessNOW mark. It has experienced a fourfold increase in subscribers, up to approximately 1000 individuals, since the service was introduced in April, 1995. On May 10, 1995, MTA filed a trademark application for the "WirelessNOW" mark with the United States Patent and Trademark Office ("PTO"). The PTO issued Trademark Registration No. 1,965,680 on April 2, 1996.
The Cellular Telecommunications Industry Association ("CTIA") is a trade organization for professionals in the cellular communications industry. MTA is a member of CTIA. On March 25-27, 1996, CTIA sponsored the Wireless '96 trade show in Dallas, Texas. MTA had a booth at the trade show at which it displayed the WirelessNOW information service and distributed promotional materials. During a speech at the trade show, the President of CTIA, Thomas F. Wheeler, announced WOW-COM, CTIA's new Internet site. Mr. Wheeler explained that an on-line information service called "Go Wireless Now!" would be available at the WOW-COM site. After Mr. Wheeler's announcement, several individuals approached the MTA booth and inquired whether CTIA was a sponsor of WirelessNOW or if WirelessNOW was the service being offered by CTIA. In addition, MTA subsequently received telephone and e-mail inquiries from others who expressed some confusion about whether CTIA and MTA are affiliated.
After the trade show, MTA contacted counsel for CTIA, Michael Altshul, and informed him that WirelessNOW was a registered trademark of MTA and that the WirelessNOW service had been in operation since April, 1995. On April 18, 1996, MTA wrote a letter to Mr. Altshul, describing the confusion that had arisen as a result of the introduction of Go Wireless Now! On May 1, 1996, MTA sent a "cease and desist" letter to CTIA, demanding that CTIA cease using the Go Wireless Now! mark. This lawsuit was filed on May 31, 1996, the eve of the launching of CTIA's Go Wireless Now! service.

DISCUSSION
In determining whether a preliminary injunction should be granted, the moving party must demonstrate that it is likely to prevail on the merits, that it will suffer irreparable injury absent the grant of injunctive relief, that the issuance of an injunction will not cause substantial harm to other persons interested in the proceedings, and that the issuance of an injunction is in the public interest (or at least is not adverse to the public interest). Washington Metropolitan Area Transit Comm'n. v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir.1977); Express One Int'l, Inc. v. U.S. Postal Service, 814 F.Supp. 87, 88 (D.D.C.1992).

A. Likelihood Of Success
In order to prevail in a trademark infringement case, the plaintiff must show (1) that it owns a valid trademark, (2) that its *476 trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark. Sears, Roebuck and Co. v. Sears Financial Network, 576 F.Supp. 857, 861 (D.D.C.1983) (citation omitted). Thus, on a motion for a preliminary injunction, the Court must assess the plaintiff's likelihood of demonstrating that it meets the three part Sears, Roebuck test.
There does not appear to be any dispute between the parties that MTA owns a valid registered trademark for "WirelessNOW." CTIA argues that MTA's mark falls into a different registration classification from the classification under which CTIA seeks to register Go Wireless Now! CTIA points out that WirelessNOW was originally designed as a subscription bulletin board system which could not be accessed directly from the Internet, while Go Wireless Now! was designed to be accessible through the World Wide Web to anyone with Internet access.[1] The sole purpose of a classification of goods, however, is for internal administration within the PTO. The class to which a product may be assigned does not limit or extend the registrant's rights and has no bearing on likelihood of confusion. Mobil Oil Corp. v. Walter Kidde & Co., 167 U.S.P.Q. 478 (T.T.A.B.1970); National Football League v. Jasper Alliance Corp., 16 U.S.P.Q.2d 1212 n. 5 (T.T.A.B.1990).
As for the second prong of the Sears, Roebuck test, registration of a trademark is prima facie evidence of the plaintiff's exclusive right to use the mark for the services described in the registration statement and that the "mark is distinctive of [the plaintiff's] products in commerce." American Ass'n for Advancement of Science v. Hearst Corp., 498 F.Supp. 244, 254 (D.D.C. 1980). "The general rule regarding distinctiveness is clear: an identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992). Generic and descriptive terms receive little or no trademark protection, while suggestive, arbitrary or fanciful marks are viewed as inherently distinctive and entitled to varying degrees of protection. Id. at 768, 112 S.Ct. at 2757.
Although the term "wireless" on its own may be a commonly used industry term, the combination of words that forms "WirelessNOW" is unusual and distinctive. Plaintiff has made a strong showing that the mark is suggestive of the service offered by MTA and CommunicationsNOW and that the combination of words that makes up the MTA mark does not have a non-trademark meaning that could lessen the distinctiveness of the mark. MTA's argument that the mark has acquired distinctiveness as a result of widespread marketing and the fourfold growth of MTA's subscriber base is not persuasive as to the entire market of Internet users sought by CTIA but does bolster MTA's distinctiveness argument with respect to the portion of the market comprised of computer professionals. Having made a strong showing that its mark is suggestive of the service it offers and is distinctive, MTA need not demonstrate that WirelessNOW has acquired a secondary meaning. West & Co., Inc. v. Arica Institute, Inc., 557 F.2d 338, 342 (2d Cir.1977).
The third prong of the Sears, Roebuck test concerns the basic issue in a trademark case, i.e., whether the relevant purchasing public is likely to be confused by the use of the defendant's mark. It is plaintiff's burden to prove that "an appreciable number of ordinary prudent consumers are likely to *477 be misled, or simply confused, as to the source of the goods in question." Sears, Roebuck & Co. v. Sears Financial Network, 576 F.Supp. at 861 (citations omitted). In assessing likelihood of confusion, the Court must consider a number of factors, including:
(a) the strength of the plaintiff's mark;
(b) the degree of similarity between the two marks;
(c) the proximity of the products;
(d) the likelihood that the prior owner will bridge the gap between its market or business and the second owner's market or business;
(e) evidence of actual confusion;
(f) the defendant's purpose or reciprocal of good faith in adopting its own mark;
(g) the quality of defendant's product; and
(h) the sophistication of the buyers.
Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).
Evaluation of the strength of MTA's mark is similar to evaluation of the distinctiveness of the mark or its acquisition of a secondary meaning. The Court, having found MTA likely to succeed in its claim that WirelessNOW is distinctive, also finds that MTA is likely to demonstrate that WirelessNOW is a strong mark.
In comparing the two marks, the focus is on whether a similarity exists that is likely to cause confusion. Sears, Roebuck & Co. v. Sears Financial Network, 576 F.Supp. at 862. Where the goods and services are competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 349 (9th Cir. 1979).
The Court finds several confusing similarities between WirelessNOW and Go Wireless Now! Both marks contain the words "wireless" and "now" in sequence and thus are phonetically similar. Defendant precedes those words with "Go" and completes its mark with an exclamation point, but each of these additions can easily be read as flourishes added to encourage people to use a product with a name composed of "wireless" and "now" in conjunction with each other. Defendant points out that the marks appear in different typefaces and are accompanied by different graphics, but even the logo design of Go Wireless Now! separates the word "Go" from "Wireless Now!" in a manner that might suggest that "Go" is not part of the mark, but a verb directing the consumer to "go to" or "use" a service called "Wireless Now"; the exclamation point only serves to enhance that impression.[2] Moreover, by pointing out that the Go Wireless Now! web page designer titled the screen and book-mark for that service "Wireless Now," plaintiff has made a strong showing that the two marks may stimulate a similar mental reaction.[3]
Turning to the proximity or similarity of the products and the likelihood that MTA will bridge the gap between its own and CTIA's market, the Court finds that MTA has made a strong showing that the markets that each party wishes to serve overlap and soon may become coterminous. Both target their services to the same sophisticated industry professionals and, while WirelessNOW has until now only been accessible through a bulletin board, beginning this month some subscribers will be able to access WirelessNOW through an Internet web site like CTIA's.
Evidence of actual confusion is not necessary to prove likelihood of confusion, but actual confusion is substantial proof of the existence of the likelihood of confusion. Sears, Roebuck & Co. v. Sears Financial Network, 576 F.Supp. at 861. In this case, plaintiff has presented evidence of inquiries from customers and potential customers concerning the relationship between CTIA and MTA and/or between Go Wireless Now! and WirelessNOW. The Court accords some weight to this evidence, but does not find it *478 determinative of likelihood of confusion because it is difficult at this stage in the proceedings to evaluate whether the evidence presented by plaintiff is evidence of confusion or mere inquiries by industry members into the relationship between the parties. Compare Susan's, Inc. v. Thomas, 1993 WL 93333, 26 U.S.P.Q.2d 1804 (D.Kan.1993) with Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072 (2d Cir.1993). Moreover, the questions received by MTA might only be evidence of consumer error not related to name confusion. See Lang v. Retirement Living Publishing Co., Inc., 949 F.2d 576 (2d Cir.1991).
Plaintiff has also sought to prove that defendant adopted Go Wireless Now! with the intent of deriving benefit from plaintiff's reputation and advertising. Such intent is relevant to the likelihood of confusion. In this case the Court concludes that the decision by CTIA to use the mark "Go Wireless Now!" was not completely innocent. Certainly by March 1996, CTIA was aware that WirelessNOW was an information service provided by CommunicationsNOW. Furthermore, while CTIA may have planned for introduction of its service before the trade show in late March 1996, the service was not announced and made available until then and the trade-mark for "Go Wireless Now!" was not applied for until after MTA had informed CTIA that "Wireless Now" was the registered trademark of MTA and that there was already some confusion in the marketplace. CTIA proceeded at its own risk. See National Rural Electric Cooperative Association v. National Agricultural Chemical Association, 1992 WL 477020, *4 (D.D.C. Nov. 25, 1992).
Based upon an assessment of the relevant factors, the Court concludes that plaintiff has demonstrated a likelihood of success on the merits.

B. Irreparable Injury
Trademark infringement raises a presumption of irreparable harm. See Crime Control, Inc. v. Crime Control, Inc., 624 F.Supp. 579, 581 (D.D.C.1984); Sears, Roebuck & Co. v. Sears Financial Network, 576 F.Supp. at 864. MTA argues that it will suffer irreparable injury to the goodwill and reputation associated with its trademark by virtue of the fact that it has no control over the quality of Go Wireless Now!, but will become associated with Go Wireless Now! as a result of consumer confusion. CTIA attempts to rebut the presumption of harm by arguing that claims of likely harm are speculative and by pointing out that MTA has previously sought out association with CTIA. These arguments are unpersuasive in light of the fact that continued use of the Go Wireless Now! mark could lead to dilution of the distinctiveness of the WirelessNOW trademark and loss of control over its reputation, harms not compensable in money damages.

C. Balance Of Harms
Defendant contends that it has invested substantial sums in its Go Wireless Now! service and that it will suffer serious financial injury if a preliminary injunction is issued. The Court is not persuaded that the injury to CTIA is as great as forecast by its attorneys. The issuance of a preliminary injunction against use of the mark Go Wireless Now! would not prevent CTIA from continuing to provide the service. It would merely require CTIA to find another way to identify the service. Moreover, the balance of harms cannot favor a defendant whose injury results from the knowing infringement on the plaintiff's trademark. Otherwise, every infringer who invested large sums of money in the unlawful activity could shield its wrongdoing. The Court concludes that the balance of the harms favors the granting of a preliminary injunction.

D. Public Interest
Defendant argues that it is in the public interest that the services made available at its WOW-COM Internet site, including Go Wireless Now!, continue to be available to the public. On the other hand, plaintiff argues that it is in the public interest for the Court to prevent public confusion over the source or origin of products provided to the public. The Court agrees with plaintiff, particularly because the issuance of a preliminary injunction would not force CTIA to stop providing the services currently available under *479 the Go Wireless Now! mark. It would merely require CTIA to differently identify the service provided. See Sears, Roebuck & Co. v. Sears Financial Network, 576 F.Supp. at 865.
For the foregoing reasons, MTA's application for preliminary injunction is GRANTED. CTIA is enjoined from
(1) Using MTA's trademark, Wireless-NOW;
(2) Using the term Go Wireless Now! in any form, including, but not limited to, use connected to on-line information services relating in whole, or in part, to the wireless telecommunications industry; and
(3) Offering for sale, selling, or advertising the sale of or offering to provide access, providing access or advertising access to, on-line information services that use or incorporate the term Go Wireless Now!
SO ORDERED.
NOTES
[1] The Internet is a giant network which interconnects innumerable smaller groups of linked computer networks. Bulletin board services are dial-in computer services which may or may not be linked to the Internet. The World Wide Web is a method for communicating over the Internet that permits the user to locate a document by its address and then jump to other documents that are linked to the first document. Many organizations have "home pages" on the Web. These are documents that provide a set of links designed to represent the organization, and through links from the home page, guide the user directly or indirectly to relevant information. See American Civil Liberties Union v. Reno, 929 F.Supp. 824, 831, 834, 836 (E.D.Pa.1996). WOW-COM is CTIA's home page and Go Wireless Now! is a link.
[2] CTIA's home page urges: "Need a phone? Need a service provider? Need information? Go Wireless Now!"
[3] Every web page has a title that usually appears at the top of the page and is used to identify the content of the page. A bookmark is used to help users return quickly to web pages that he or she visits often.