Michael Joseph and Wayne A. Keup, Washington, D.C., for plaintiff.

Molly D. Current, Asst. U.S. Atty., Washington, D.C., for defendant.

**UNITED POWER CORPORATION, Plaintiff,**

v.

**UNITED STATES of America DEFENSE MAPPING AGENCY, Defendant.**

**Civ. A. No. 90–0931 JGP.**

United States District Court, District of Columbia.

May 7, 1990.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

The plaintiff filed this action on April 20, 1990, in which it alleges that the Defense Mapping Agency (DMA) "wrongfully deprived plaintiff of a small business 'set aside'" Government contract to which it is entitled. The case came before the Court on April 23, 1990, for a hearing on plaintiff's Application for a Temporary Restraining Order. Subsequent to the hearing the Court denied the Application. *See* Memorandum Order filed on April 27, 1990. The case is now before the Court on the plaintiff's Motion for a Preliminary Injunction.

I

Briefly, the facts alleged in the complaint are as follows: "On or about February 13, 1990, DMA issued Request for Proposals D.M.A. 600–90–R0032 (the RFP) to be submitted by March 13, 1990, to furnish 39 devices known as Power Conditioning Systems for use in computer rooms, together with related start-up services, operator/maintenance training and documentation, and 23 additional power conditioning systems at DMA's option. The RFP provided that the procurement was a 100 percent small business set aside, meaning that only entities with not more than 500 employees and otherwise qualifying as small businesses within the meaning of the Federal Acquisition Regulations and SBA Regulations were eligible to submit proposals and receive a contract award." Complaint, par. 4. Section 15.1001(b)(2), 48 C.F.R. § 15.1001(b)(2), of the Federal Acquisition Regulations (FARs) prohibits the award of a contract set aside for small businesses unless the contracting officer informs each unsuccessful offeror of the name and location of the apparent successful offeror. Complaint, par. 5. Plaintiff alleges that the regulations provide that if the contracting officer receives a protest concerning the small business qualifications of the apparent successful bidder, then the contracting officer may not award the contract until the Small Business Administration (SBA) has acted upon the protest or until expiration of ten days following SBA's receipt of the protest. These requirements are to enable unsuccessful offerors to challenge the small business qualification of the apparent successful bidder as a means of preventing contract awards to the bidder if the SBA determines that such bidder does not qualify as a small business. *Id.* Plaintiff also complains about a contemporaneous subcontract to furnish 13 power conditional systems to Eurostyle.

Plaintiff asserts that on February 26, 1990, approximately two weeks prior to the deadline for submitting proposals, representatives of the plaintiff attended a pre-proposal conference relating to the RFP during which DMA confirmed orally and in writing that only entities qualifying as small businesses would be eligible for the contract award. Complaint, par. 6. Plaintiff and five other offerors submitted proposals in response to the RFP on March 13, 1990 and three days thereafter, on or about March 16, 1990, DMA awarded the contract to furnish the 39 power conditioning systems to EPE Technologies, Inc. (EPE). Complaint, par. 7. Plaintiff states that at no time prior to awarding the contract did DMA inform plaintiff that DMA intended to award the contract to EPE or make a determination that it was not required to inform plaintiff because of the urgency of the procurement requirement necessitated contract award without delay. The parties apparently agree, that at the time the RFP was issued, DMA did not anticipate awarding the contract to the successful offeror until on or about May 1, 1990. *Id.*

On March 20, 1990, the plaintiff protested the qualification of EPE as a small business. By decision dated April 5, 1990, the SBA determined that as of March 8, 1990, the date on which EPE certified that it was a small business, that it was in fact "a large business and was not eligible to bid on this procurement." Complaint, par. 8 and Complaint, Exhibit B at 2. DMA represents that it was advised of SBA's decision on April 10, 1990.

On or about April 13, 1990, DMA informed plaintiff that it would not terminate the contract awarded to EPE notwithstanding the fact that plaintiff had not been informed of DMA's intent to award the contract prior to doing so and notwithstanding the SBA's determination that EPE was ineligible to submit a proposal in response to the RFP. Complaint, par. 9. On April 17, 1990, plaintiff filed with the General Accounting Office (GAO) a protest of DMA's award of the contract to EPE, requesting GAO to determine that the award was unlawful and to recommend termination of the contract. GAO has established an expedited schedule for the determination of plaintiff's protest and has advised plaintiff it may expect a final determination prior to the end of May 1990.

Plaintiff alleges that "[h]ad DMA complied with the requirement to inform plain-

tiff of its intention to award the contract to EPE prior to making such award, SBA's determination of EPE's ineligibility would have been made prior to award, the contract would not have been awarded to EPE and, upon information and belief, the contract would have been awarded to plaintiff." Complaint, par. 12.

In its motion, the plaintiff requests a preliminary injunction "directing the United States, acting by and through the Director of the Defense Mapping Agency, [to] direct EPE Technologies, Inc. to forthwith, and until a decision is made by the General Accounting Office with respect to plaintiff's protest dated April 13, 1990, suspend all contract performance resulting from the Request for Proposals DMA–600–90–R0032 and the contemporaneous subcontract to furnish 13 power conditioning systems to Eurostyle."

Defendant concedes that the Contracting Officer in this case failed to give preaward notice to the unsuccessful offerors, including the plaintiff, pursuant to FAR, 48 C.F.R. § 15.1001(b)(2), but argues that the notification requirement was properly waived in this case because the Contracting Officer made a determination of urgency prior to awarding the contract to EPE, and that this determination was later reduced to writing. The Contracting Officer states that the due date for proposals was March 13, 1990 and that the technical evaluations commenced on March 14. Late in the afternoon of March 15, 1990, "[she] was informed by senior management that it appeared all DoD funds for obligation under contracts would be frozen on or about Monday, 19 March 1990. [She] was requested by Senior DMA management to make every effort to award this power conditioner contract prior to the imposition of the freeze." Alcott Affidavit–C[1], signed April 23, 1990, at par. 3. She states that the evaluation of the proposals was completed on either March 15 or 16, and that "[she] determined that two offerors (EPE Technologies, Inc. and United Power) were in the competitive range (of the five originally submitted)." Id. Based upon the "Greatest Value Scoring" (GVS), she "determined that there was no need for discussions and found EPE to be the successful offeror." Id.

The Contracting Officer then considered whether the facts and circumstances justified waiving the notice to unsuccessful offerers. She considered "the urgency of the need, the GVS scores of the offers, the imminent spending freeze, and the fact that there was only one reasonably priced offer left in the competitive range." Id., par. 4. She checked to satisfy herself that EPE was, in fact, a small business. Id. On March 16, she determined that the "urgency of the procurement precluded providing the required notice." Id., par. 5. She awarded the contract to EPE on that day. Id. On March 19, a Monday, she prepared a signed written waiver and completed a signed memorandum detailing the rationale for waiving the preaward notice. Id. She executed a final version of the waiver memorandum on April 13, 1990. Id.

The Contracting Officer received the SBA determination on or about April 10, 1990. Alcott Affidavit–B, par. 5. She then considered whether she should terminate the EPE contract and award the contract to the plaintiff. Id., par. 6. She states that she decided to allow the award to stand. First, she felt that the procurement was "extremely time sensitive and is in support of the DPS (Digital Production System)." Id., par 9. Second, she concluded that the plaintiff's price was unreasonable. Id., par. 10. She noted that the EPE evaluated price is $1,510,730, while the plaintiff's evaluated price is $2,061,248, a difference of over $550,000. Id. She observed that: "This is an extremely large price differential and one that I cannot justify, using the cost/price analysis tools available to me." Id. She noted that she cannot award on a small business set aside if the price exceeds the fair market price, and thus, taking into

---

1. Diane K. Alcott, the Contracting Officer, executed two affidavits on April 23, 1990, one identified as Defendant's Opposition Exhibit B, and the other as Defendant's Opposition Exhibit C.

In order to distinguish between the two, Exhibit B will be referred to as "Alcott Affidavit–B", and Exhibit C will be referred to as "Alcott Affidavit–C".

consideration the urgency of having the project completed and the time necessary to begin the process again, she concluded, a termination of the EPE contract would not lead to a award to plaintiff and therefore, the contract should remain with EPE. *Id.* Finally, she recognized that exercising options in 1991 and 1992 may not be appropriate and that remaining power units should be procured using full and open competition. *Id.,* par. 14.

## II

In order to be entitled to injunctive relief, the moving party must establish that it is likely to prevail on the merits, that it will suffer irreparable injury if injunctive relief is denied, that the other parties will not suffer substantial injury if injunctive relief is granted, and that the granting of injunctive relief is in the public interest. *Washington Metropolitan Area Transit Com'n v. Holiday Tours, Inc.,* 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (1977). "The necessary 'level' or 'degree' of possibility will vary according to the court's assessment of the other factors." *Id.*

Plaintiff argues that without a preliminary injunction, it will lose the opportunity to obtain the contract because EPE will continue to perform the contract, possibly at an accelerated pace, to a point at which a new contract would be impractical even if GAO held in its favor. GAO, however, has placed plaintiff's protest on an expedited schedule and anticipates making a determination prior to the end of May 1990. The contract is expected to be completed in November, 1990. Although EPE has been performing the contract, it will only have been performing the contract for approximately two months at the time GAO makes a determination. Thus, if GAO determined that the contract ought to be terminated, approximately seven months (out of a possible nine months) of contract performance would remain to be completed.

With respect to the likelihood of the plaintiff prevailing on the merits, the Court hesitates to address that issue since the plaintiff has filed a protest with the GAO and that is a matter properly submitted to GAO for its consideration. *See e.g. Science Systems and Applications, Inc.,* B–236477, 89–2 CPD par. 558 (1989), and *Maximus, Inc.,* 68 Comp.Gen. 69, 88–2 CPD par. 467 (1988), *modified sub. nom. Department of Health and Human Services —Reconsideration,* 3 Comp.Gen. par. 103,-246 (1989). *But see, JTC Environmental Consultants, Inc,* B–229882, B–229882.2, 88–2 CPD par. (1988) and *Conversational Voice Technologies Corp.,* B–224255, 87–1 CPD par. (1987). The Court only observes that the plaintiff has submitted sufficient evidence for the Court to conclude that the protest filed by the plaintiff is not frivolous.

The Court also concludes that the loss of the contract would amount to irreparable harm.

As to the third issue, the question of whether the defendant or other parties concerned with this case will suffer substantial injury in the event the Court grants injunctive relief, the Court concludes that they will not. The plaintiff represents that GAO would render its determination sometime prior to the end of May 1990. Plaintiff has also filed an affidavit in support of its contention that it can meet the schedules called for by the contract even if it began the contract as late as June 1990. As to the agency, the Court notes that plaintiff has represented, and the defendant has not contradicted, that the original intention of defendant was to award the contract around mid May of 1990. The award process was accelerated solely because the defendant and the Contracting Officer were concerned that contract funds might be frozen. Thus it would appear that in soliciting bids on the contract, the defendant was operating under the assumption that the award would be made sometime around the beginning of May and that the successful contractor could meet the schedules set forth in this contract and any related contracts; all to be completed on or around November 1990. Defendant has not demonstrated that a brief delay in the continuation of the principal contract would cause any unnecessary delay or

make it likely that the project could not be completed in a timely fashion.

The Court notes that there is a dispute as to whether the plaintiff has submitted protests with respect to both the RFP DMA600–90–R0032 contract and the contemporaneous subcontract, sometimes referred to as the "Eurostyle contract." Defendant contends that the plaintiff has not filed a protest with respect to the subcontract, and if that be the case, any injunction issued by the Court would not affect EPE's performance under the "Eurostyle contract."

After giving careful consideration to the motion, the Court concludes that the motion should be granted. *First,* as noted above, while the Court will not address the merits of plaintiff's claim in view of the pending protest before GAO, the Court is satisfied that the claim is not frivolous. It is now clear that EPE is not a small business and that, on hindsight, it should not have received the contract. Moreover, if the Contracting Officer had not determined that the notice required by Section 15.-1001(b)(2) could be waived, the defendant would have had access to the SBA decision before having awarded the contract to EPE.

*Second,* the plaintiff will suffer irreparable harm if it loses the contract. While it is true that, assuming plaintiff prevails before the GAO, the contract awarded to EPE could be terminated, it would appear that the longer EPE works on the contract, the less likely the possibility of termination of the contract.

*Third,* it is unlikely that the defendant will suffer any injury if the Court grants injunctive relief because the duration of the injunction would be relatively short. It is anticipated that GAO will render its determination within 25 days. Such a short period should not prevent completion of the contract by November 1990. Plaintiff has stated that it can complete the contract within the applicable timeframe if it begins by the end of June 1990, and EPE has already begun the contract and thus should be able to complete within the same timeframe, notwithstanding the brief delay. Finally, in this connection, the Court notes that the defendant had planned to make the contract award on or about May 1, 1990, but made the award on March 16, 1990, out of fear that the funds would be frozen. The Court's injunction would delay the contract no more than 25 days and the defendant awarded the contract 45 days earlier than it intended date, thus, the time permitted for completion of the contract is still greater than that originally contemplated by the defendant. Last, in this regard is that, if defendant is correct and a protest has not been filed with GAO challenging the Eurostyle contract, EPE is free to continue to work on the subcontract notwithstanding the Court's order granting an injunction. This is so because the Court's order is only intended to maintain the status quo as to those matters actually before the GAO.

*Fourth,* the granting of a short duration injunction is in the public interest. The defendant had determined that the contract would be awarded to a small business concern. Presumably it made that determination after factoring in the time for completion and the cost of the contract. It is in the public interest that the contract be awarded to a small business if possible and it is in the public interest that the GAO, the agency having the responsibility of addressing disputes of this nature, be afforded a full opportunity to address, and if necessary, remedy the instant dispute.

The defendant argues that the injunction should not be granted because the Contracting Officer has already determined that it will not award the contract to the plaintiff in any event. The Court has avoided addressing the merits of plaintiff's claim and will not consider whether such a decision by the Contracting Officer is arbitrary or an abuse of discretion since, depending on the action of GAO such a determination may be unnecessary. The Court only observes that the pronouncement by the Contracting Officer should not be dispositive as to the request for injunctive relief.

The Court notes that the controversy may have been avoided if the defendant,

after being advised that a size protest was being submitted to SBA, would have stayed the contract until SBA had made a decision. The defendant knew that any application to SBA by plaintiff and any decision by SBA had to be expedited. The plaintiff's protest was timely and SBA was required to respond within ten days of receiving the protest and information pertinent to the protest. *See* 48 C.F.R. § 19.302(g).

After weighing all of the above factors, the Court concludes that injunctive relief should be granted as to the protest submitted by plaintiff to the GAO.

At the hearing on plaintiff's application for a temporary restraining order, plaintiff argued that it should not be required to post a bond if injunctive relief is granted. On the other hand, the defendant argues that the plaintiff should be required to post a bond in the amount of $2.5 million dollars. The Court must reject the plaintiff's contention on this matter and the Court concludes that the defendant's request is excessive considering the limited duration of the injunction and the fact that, for the reasons outlined above, the injunction should cause no delay in the performance of the contract. Again, it is noted that the defendant originally contemplated awarding the contract on or about May 1, 1990. Under the circumstances, a bond in the amount of $100,000 appears reasonable.

It is hereby

ORDERED that plaintiff's motion for a preliminary injunction is granted, and it is further

ORDERED that the defendant, acting through the Director of the Defense Mapping Agency, shall direct EPE Technologies, Inc. to forthwith, and until a decision is made by the General Accounting Office with respect to plaintiff's protest dated April 13, 1990, suspend all contract performance resulting from Request for Proposals DMA600–90–R0032 and the contemporaneous subcontract, the latter only if it is the subject of the above protest, and it is further

ORDERED that the injunction is entered subject to the plaintiff posting bond in the amount of $100,000.00.