**DIVERCO, INC., Plaintiff,**

v.

**Richard B. CHENEY, Secretary of Defense, Defendant.**

Civ. A. No. 90–1803.

United States District Court, District of Columbia.

Aug. 10, 1990.

Charles E. Raley, Washington, D.C., for plaintiff.

Susan Nellor, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

### I.

On August 1, 1990, plaintiff filed this disappointed bidder suit, in which it alleges that the Defense Logistics Agency ("DLA") awarded a government contract to a nonresponsive offeror in violation of statutory requirements. This case comes before the Court on the Motion for a Preliminary Injunction filed by the plaintiff Diverco, Inc. ("Diverco") on August 1, 1990. Diverco seeks an order enjoining defendant Richard Cheney, the Secretary of Defense, both from undertaking any action to permit continued performance of the challenged contractor and from making another award of the contract to anyone other than Diverco prior to a final decision on the pending protest filed before the Comptroller General. The Court heard oral argument on the motion on August 8, 1990. After careful consideration of the motion, the opposition thereto and the entire record in this case, the Court concludes that the motion should be denied.

### II.

On or about December 7, 1989, the Defense Logistics Agency, Defense Construction Supply Center ("DSCS") issued solicitation DLA 700–90–R–0437. The Solicitation sought proposals for the supply of a total of 2,452 gearshaft spurs for use in combat support vehicles. The Solicitation included Clause I81, "Required Sources for Forging and Welded Shipboard Anchor Chain Items (AUG 1985)," Defense Acquisition Regulation Supplement ["DFARS"] section 252.208–7005, which requires the forgings acquired by the federal government be manufactured in the United States. The gear shaft spurs to be acquired include forgings which are covered by Clause I81.

Several offers were received in response to the solicitation. The lowest offer received in response to the solicitation was submitted by Metalcastello, at the unit price of $91.51. Metalcastello listed its place of manufacture as Italy. The offer submitted by Diverco was $114.15 per item. Diverco's offer was the fourth lowest offer.

On February 23, 1990, the contract was awarded to Metalcastello. On March 5, 1990, Diverco filed a protest with the contracting officer. Diverco therein argued that Metalcastello intended to provide only non-domestic forgings in response to the Solicitation and requested that the contracting officer cure the failure to require delivery of domestic forgings as specified in the Solicitation and required by law. This protest was denied.

DCSC subsequently attempted to obtain confirmation from Metalcastello that the gearshafts would be manufactured with from domestic forgings. Metalcastello responded that the gearshafts could be made from foreign forgings because they were not to be used on combat support vehicles. DSCS then confirmed with the United States Army Tank–Automotive Command that the gearshafts being procured were to be used on combat support vehicles.

On August 1, 1990, Diverco filed this suit and a protest with the General Accounting Office ("GAO").

Counsel for defendant represented to the Court at oral argument that to remedy Metalcastello's failure to supply domestic forgings, DSCS issued a stop work order on the contract on August 8, 1990. DSCS has further stated its intent to amend the Solicitation by deleting the I81 clause requiring domestic forgings,[1] to provide another round of negotiations at which time the contractors will submit new offers based on the amended solicitation, and to award a new contract if warranted based upon the best offer.

### III.

In the instant motion, plaintiff requests an order preliminarily enjoining the defendant from continuing performance on the contract until a decision is issued by the GAO on its protest. In order to be entitled to injunctive relief, the moving party must establish that it is likely to prevail on the merits, that it will suffer irreparable injury if injunctive relief is denied, that the other parties will not suffer substantial injury if injunctive relief is granted, and that the granting of injunctive relief is in the public interest. *Washington Metropolitan Area Transit Authority v. Holiday Tours, Inc.*, 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (1977) (hereinafter *WMATA v. Holiday Tours*). The district court has broad discretion in balancing these factors. *Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 157 (D.C.Cir.1985). As the court explained in *WMATA v. Holiday Tours*, "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." 559 F.2d at 843. Thus, even if a plaintiff has not made a particularly strong showing of likelihood of success on the merits, a court may, in the proper exercise of its discretion, grant temporary injunctive relief if the plaintiff demonstrates that the other three equitable factors weigh in his favor.

After careful consideration of the motion, the Court concludes for the following reasons that the motion should not be granted. *First*, the Court will briefly address the likelihood of whether Diverco will prevail on the merits. "The court's role in reviewing agency contract decisions is limited to determining whether the agency acted in accord with applicable statutes and regulations and had a rational basis for its decisions." *Delta Data Systems Corp. v. Webster*, 744 F.2d 197, 204 (D.C.Cir.1984) (citations omitted). Diverco contends that DCSC awarded the contract to Metalcastello for gearshafts made from foreign forgings in violation of the Solicitation and ap-

---

1. According to defendant, deletion of clause I81 is appropriate because DLA has recently learned that the requirement for gearshaft spurs pur-

chased under the contract award is over and above the industrial mobilization requirements.

plicable regulations. Diverco further argues that Metalcastello has always intended to use production facilities in Italy and to manufacture the required forgings in Italy in spite of the clear requirement of federal law and Clause I81 that only domestic forgings be supplied. By contrast, defendant maintains that it did not illegally award the contract to Metalcastello because in accepting Metalcastello's proposal, it did not accept a proposal which failed to conform with all of the material requirements of the Solicitation. In defendant's view, Metalcastello's offer did not indicate on its face that the gearshaft spurs themselves would actually be forged outside the United States. Defendant further asserts that since Metalcastello did not take exception to the solicitation, there was no reason to believe that its offer was for anything but the use of domestic forgings.

The Court, however, hesitates to address the merits of Diverco's claim insofar that it requires a determination of whether DLA illegally awarded the contract since a protest has been filed with the GAO by Diverco and that is a matter properly submitted to the GAO for its consideration. Consequently, the Court will limit its discussion of this issue to an observation that the record reveals that the protest filed by Diverco is not frivolous. *See United Power v. United States of America,* 736 F.Supp. 354, 358 (D.D.C.1990). In this regard, the parties agree that the Solicitation and applicable regulations mandated that an award be made only to a source that was supplying domestic forgings. It is also undisputed that, under this present Solicitation, Metalcastello is not entitled to the contract because Metalcastello has confirmed that it does not intend to comply with the domestic forgings requirement. In fact, DSCS has issued a work stop order on the contract with Metalcastello and proposes to resolicit the contract without the domestic forgings requirement. Such action confirms Diverco's assertions that the contract with Metalcastello ought to be terminated and corrective action taken. Taking into account the foregoing considerations, the Court is satisfied that Diverco's claim is not frivolous.

*Second,* Diverco will not suffer irreparable harm if injunctive relief is denied. The Court reaches this conclusion for several reasons. Diverco contends that because of defendant's actions it has been deprived of the "opportunities of the marketplace." Exactly what these marketplace opportunities are and how it amounts to irreparable injury is not adequately explained, however. Clearly Diverco may submit offers on future solicitations, including the proposed resolicitation of this contract, even if injunctive relief is denied. To the extent that Diverco complains that it has been denied "full and open competition", the proposed amended solicitation seeks to redress that injury.

More importantly, even if DSCS goes forward with its proposed amended resolicitation, the Court is not convinced that injunctive relief is required to prevent defendant from unlawfully awarding the contract to Metalcastello or some other contractor. If the contract is not awarded to Diverco after resolicitation, Diverco has the right to file a bid protest with GAO to obtain an automatic stay of the resolicited contract pending GAO's decision. Thus, without the intervention of this Court, Diverco may fully challenge the award of the contract—both under the present Solicitation and under the proposed amended solicitation—before the GAO prior to any further performance of the contract. Accordingly, Diverco has failed to demonstrate that it will suffer irreparable harm if injunctive relief is denied.

*Third,* with respect to the question whether the defendant will suffer substantial injury in the event the Court grants injunctive relief, the Court concludes that it will. Defendant has persuaded the Court that the need for gearshaft spurs is urgent, and may become critical if injunctive relief is ordered. Moreover, an extended delay in performance of the contract by an injunction pending GAO review is possible since GAO review may take up to 90 days. Although it is expected that the GAO would make efforts to comply with any request of them by the Court to handle Diverco's protest on an expedited basis, it is difficult to

742

estimate how long such review—and, consequently, the duration of the injunction—would take since Diverco only filed its protest on August 1, 1990.

*Fourth,* the public interest favors denial of the requested injunctive relief since, as noted above, Diverco will be able to pursue any future protest of the proposed amended contract prior to performance of the contract. Thus, the public interest that the GAO, the agency having responsibility for addressing these types of disputes, be afforded a full opportunity to address and take any necessary remedial action will be adequately served.

After weighing all of the above factors, the Court concludes that injunctive relief should be denied. Although Diverco has made a sufficient showing that its claim is not lacking in merit, it has failed to demonstrate that it will suffer irreparable harm if the requested injunctive relief is not granted. Further, the Court concludes that the potential harm to the defendant and the public interest favor denial of the instant motion.

In view of the foregoing, it is hereby

ORDERED that plaintiff's motion for a preliminary injunction is denied.