VIKONICS, INC., Plaintiff,

v.

The UNITED STATES of America, Defendant,

and

Science Applications International Corporation, Defendant–Intervenor.

Civ. A. No. 90–2423.

United States District Court, District of Columbia.

Nov. 2, 1990.

Sam Zalman ‘Gdanski, Spring Valley, N.Y., for plaintiff.

John Martin, Asst. U.S. Atty., Washington, D.C., for U.S.

Paul C. Fuener, Michael W. Clancy, Roberta M. Echard, Washington, D.C., for defendant-intervenor.

---

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

Plaintiff Vikonics, Inc. ("Vikonics") filed this "disappointed bidder" suit on October 2, 1990. By Order filed October 4, 1990, the Court denied Vikonics' motion for a temporary restraining order. The case is now before the Court on Vikonics' Motion for a Preliminary Injunction, filed on October 11, 1990. The Court heard argument on the motion on October 23, 1990. After careful consideration of the motion, the opposition thereto, together with the record in this case, the Court concludes that the motion should be denied for the reasons set forth below.

### I.

The Western Currency Facility of the Bureau of Engraving and Printing (hereinafter "Bureau") is being constructed near Fort Worth, Texas, to meet the currency production needs of the United States. Contracting for the new facility is being conducted for the Bureau by the United States Corp of Engineers (hereinafter "Corps"). The Western Currency Facility is expected to begin production in January 1991. Affidavit of Eugenie E. Foster, dated October 3, 1990 (hereinafter "Foster Aff.").

A Request for Proposals ("RFP") for the computerized integrated security system to be installed at the Western Currency Facility was issued on October 30, 1989. Affidavit of William D. Brown, dated October 18, 1990, para. 6 (hereinafter "Brown Aff."). The solicitation was re-issued by Errata on March 12, 1990. In response to the RFP as revised, five companies submitted proposals. Upon evaluation of these proposals, only Vikonics and defendant-intervenor Science Applications International Corporation ("SAIC") were determined to be in the competitive range for award.

The specifications of the solicitation included an intercom system and a closed circuit television system ("CCTV") among other things. The RFP specified certain acceptable manufacturers for these products and also allowed the offerors to submit requests to use substitute products. Redcom Laboratories, Inc. was identified as an acceptable manufacturer for the intercom system. With respect to the CCTV system, Diamond Electronics was listed as an acceptable manufacturer.

Paragraph 1.03(B)(1) of Section 01630 of the RFP required offerors to designate on a compliance summary form whether they were proposing the product called for by name in the solicitation or whether they were proposing an equally acceptable substitute. Additionally, each offeror was required to submit a "compliance certification" form certifying that any proposed substitute system, equipment, materials, software and other products had been thoroughly investigated and will meet or exceed standards of quality and performance of specified products. *See* RFP, section 01630, para. 1.03(C)(1). Paragraph 1.03(A)(3) of Section 01630 of the solicitation further states that the "Contracting Officer [would] review requests for substitutions during evaluation of proposals to determine acceptability." The RFP requires the Contracting Officer to evaluate technical data unfavorably where "deviations, departures, variations, exceptions, and divergences [might] have an adverse effect upon specified requirements ..." RFP, section 00851, para. 1.01(F). The solicitation also states that "[a]ny resulting award of the Contract to the Offeror shall not constitute actual, or implied, approval by the Government, of any portion of such technical data." RFP, section 00851, para. 1.01(I). Finally, the RFP allows the contracting officer to reconsider approval of any substitution "if additional data indicates that substitution will not meet required performance and criteria or specified product." RFP, section 01630, para. 1.03(D)(3). If this occurs, the RFP requires the contractor to provide the specified product. *Id.*

SAIC indicated in its proposal that with respect to the CCTV system, it was proposing a Burle, Inc. product instead of the Diamond, Inc. product specified in the solicitation. Additionally, with respect to the intercom system, SAIC proposed to provide

a Stenophone product instead of the Redcom product specified in the solicitation. By execution of the compliance certification form, SAIC certified that its substitute products would meet or exceed RFP requirements. Plaintiff proposed, however, to provide both the Diamond CCTV product and the Redcom intercom product.

In the evaluation of the proposals, the substitutions proposed by SAIC were noted and those elements of SAIC's proposal were evaluated. According to the Contracting Officer, there was not sufficient information included in SAIC's submission to adequately evaluate the substitution proposed on the CCTV system. *See* Brown Aff. at para. 36. In addition, questions were raised regarding whether SAIC's proposed substitution for intercom system complied with the RFP's requirement. *Id.* at para. 34. The technical evaluators, who did not have the benefit of full technical data, commented that the system was not "non-blocking."[1] *Id.*

The evaluation plan utilized for the proposals included a complex scoring methodology to measure the degree of technical compliance of the offerors with the requirements of the RFP. Under this methodology, a score of 1000 points constituted full compliance with the RFP. Scores below 1000 points measured the shortfall in compliance and scores above 1000 points measured the extent to which RFP requirements were exceeded by an offeror. *Id.* at paras. 24–29.

On the basis of the information supplied in SAIC's proposal, SAIC's technical score was down-graded with respect to the CCTV requirement and the intercom requirement. With respect to the intercom requirement, the maximum weighted score which could be achieved for full compliance was 31.2. *Id.* at para. 30. As a result of the information supplied by SAIC in its proposal, SAIC received a score of 24.96. *Id.* at para. 34. Similarly, with respect to the CCTV requirement, the maximum weighted score which could be achieved for full compliance

was 4.25 points. *Id.* at para. 29. SAIC was given a score of 2.15 points in this category. *Id.* Since Vikonics proposed to provide both of the brand name products for these requirements, it received the maximum score possible for full compliance in these two categories.

Overall, SAIC received a final score of 1,108.38 and Vikonics received a final score of 912.35. *Id.* at para. 43. Additionally, the price of Vikonics' proposal significantly exceeded the price of SAIC's proposal. *Id.* at para. 21. On July 19, 1990, the contract was awarded to SAIC. Prior to commencement of this suit, SAIC submitted the specified Diamond equipment, rather than the Burle product, for the CCTV system. Additionally, on September 7, SAIC provided additional information concerning the Stenophone intercom system, its proposed substitute. SAIC stated that the system would have 15 non-blocking channels. The government determined that 23 channels would be necessary, and so informed SAIC by letter dated October 15, 1990. *See* Affidavit of Robert J. Hobbs, dated October 18, 1990.

### II.

■ In the instant motion, Vikonics requests an order preliminarily enjoining the government from continuing performance on the contract with SAIC pending a determination of the case on the merits. In order to be entitled to injunctive relief, the moving party must establish that it is likely to prevail on the merits, that it will suffer irreparable injury if injunctive relief is denied, that the other parties will not suffer substantial injury if injunctive relief is granted, and that the granting of injunctive relief is in the public interest. *Washington Metropolitan Area Transit Authority v. Holiday Tours, Inc.*, 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (1977) (hereinafter *WMATA v. Holiday Tours*). The district court has broad discretion in balancing these factors. *Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 157 (D.C.

---

**1.** Non-blocking means that whenever the receiver is picked up a dial tone, rather than a busy signal, can be obtained. Brown Aff. at para. 32.

Cir.1985). As the court explained in *WMATA v. Holiday Tours,* "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." 559 F.2d at 843. Thus, even if a plaintiff has not made a particularly strong showing of likelihood of success on the merits, a court may, in the proper exercise of its discretion, grant temporary injunctive relief if the plaintiff demonstrates that the other three equitable factors weigh in his favor. After careful consideration of the motions, the Court concludes for the following reasons that the motion should be denied.

■ *First,* the Court will briefly address the likelihood of whether Vikonics will prevail on the merits. "The court's role in reviewing agency contract decisions is limited to determining whether the agency acted in accord with applicable statutes and regulations and had a rational basis for its decisions." *Delta Data Systems Corp. v. Webster,* 744 F.2d 197, 204 (D.C.Cir.1984) (citations omitted). Under this standard of review, the Court is not authorized to conduct a *de novo* review, or to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Vikonics argues that the contract was awarded to SAIC in violation of the solicitation and the Competition in Contracting Act, 10 U.S.C. 2304(a)(1)(A) (Supp. IV. 1988). Vikonics specifically contends that SAIC's proposed substitutions for the security intercom system and the CCTV system failed to meet the specification requirements, and that the government's award of the contract to SAIC constituted an impermissible waiver or relaxation of the specification requirements. By so doing, Vikonics charges that the government relaxed its technical requirements for SAIC, but not for the other offerors, and this prejudiced Vikonics' ability to receive a contract award in this solicitation. In Vikonics' view, the Solicitation required the government to reject SAIC's proposal outright because it was technically deficient.

For the following reasons, the Court concludes that Vikonics has not made a suffi-cient showing that it is likely to succeed on the merits. The solicitation must be read as a whole in determining whether the government violated the applicable rules. In making its point, plaintiff, however, relies principally on the provision that requires that the agency review requests for substitutions during the evaluation of proposals to determine acceptability. Although it appears that the government did make efforts to review SAIC's proposed substitutions during evaluation of proposals, the present record shows that the government failed to make a determination on the acceptability of the Burle and Stenophone products prior to awarding the contract to SAIC. In fact, the government concedes that because there was insufficient data to make a conclusive determination on the acceptability of these products at that time, it decided to rely on SAIC's certification that the products would meet or exceed the standards of the specified products. In Vikonics' view, rather than rely on SAIC's certification, the RFP required the government to reject SAIC's proposal since it proposed substitutions which had not yet been determined to be acceptable. This Court has not been able to locate any provision of the RFP which places this requirement on the government.

Moreover, when viewing the solicitation as a whole, there appears to be even less support for such a requirement. For example, the solicitation allows for the down scoring of unfavorable technical deviations in a proposal. This provision would seem to controvert a requirement that proposals which include possibly unacceptable substitutions be rejected. Additionally, the solicitation allows the contracting officer to reconsider approval of any substitution if additional data shows that it is unacceptable. Implicit in this provision is a recognition that the agency may not have all of the relevant data necessary to make a final determination during the evaluation of proposals. Finally, given the disparity in the price of Vikonics' proposal as compared to SAIC's, and the difference in the technical compliance scores earned, it is unlikely that Vikonics' can show any competitive prejudice resulting from the government's ac-

tions. The record shows that SAIC's proposal was superior in both of these areas, and that even if the specifications of the solicitation were relaxed for all of the offerors—as Vikonics' alleges it had been for SAIC—Vikonics' would not be able to make up the difference in price or technical score.

The Court is also mindful that, according to the contracting officer, Vikonics' proposal had several technical flaws which resulted in an overall score of 912.35 in the area of technical compliance. Thus, were the rules of the solicitation to operate as Vikonics' suggests, the government would have had to throw out Vikonics' proposal along with SAIC's.

*Second*, Vikonics has failed to show that absent injunctive relief it will suffer irreparable injury. On the issue of irreparable injury, Vikonics has submitted the supplemental affidavit of John Strong, a Vice President of Vikonics. *See* Affidavit of John Strong, dated October 22, 1990 (hereinafter "Strong Aff."). Strong asserts that the value of Vikonics' stock has dropped, that it has had difficulty raising capital, and that its bond rating may be damaged because it was not awarded the contract. Strong Aff. at paras. 4–6. In the Court's view, Vikonics' is merely speculating on these points. Moreover, it's unlikely these harms will be alleviated by the injunctive relief requested in this motion, i.e. issuance of a stop work order pending a determination on the merits.

*Third*, for the reasons set forth in the Memorandum Order denying Vikonics' motion for a temporary restraining order, the Court again concludes that the government would not suffer substantial injury if injunctive relief were granted. *See* Memorandum Order filed October 4, 1990. With respect to SAIC, however, an injunction may result in the risk of financial harm caused by performance delays.

*Fourth*, while the public interest favors government compliance with applicable statutes and regulations, it's clear that Vikonics has not made a satisfactory showing that it is likely to succeed on the merits. Under these circumstances, the public interest weighs against disruption of contract performance.

After weighing all of the above factors, the Court finds that injunctive relief should be denied. Vikonics has not sufficiently established that it is likely to succeed on the merits or that it will suffer irreparable harm if injunctive relief is denied. Further, the Court finds that if injunctive relief were granted, SAIC would face the risk of economic harm. Finally, the public interest favors denial of the motion.

In view of the foregoing, it is hereby

ORDERED that plaintiff's motion for a preliminary injunction is denied.