EXPRESS ONE INTERNATIONAL,
INC., Plaintiff,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

EMERY WORLDWIDE AIRLINES,
INC., Plaintiff,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

Civ. A. Nos. 92–2207 (RCL),
92–2210 (RCL).

United States District Court,
District of Columbia.

Oct. 23, 1992.

Cheryl Joel Van Over, William James Mertens, Swidler & Berlin, Washington, DC, for plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for defendant.

John A. Ordway, Oppenheimer Wolff & Donnelly, Washington, DC, for intervenor-plaintiff Emery Worldwide Air.

Andrew B. Sacks, Galland, Kharasch, Morse & Garfinkle, Washington, DC, for intervenor-defendant Postal Air.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case came before the court for a hearing on plaintiff Emery Worldwide's [1] Motion for Preliminary Injunction on October 16, 1992. Upon consideration of Emery's Motion, the Oppositions of the Federal Defendant and the Defendant–Intervenor Postal Air, Emery's Reply, Emery's Supplement to its Reply, Postal Air's Surreply, and the Federal Defendants' Response, as well as the arguments of counsel, and for the reasons presented below, Emery's Motion for Preliminary Injunction is GRANTED. An appropriate order will issue this date.

## I. FACTS.

Plaintiffs in these consolidated suits, Emery and Express One, are disappointed bidders for a ten-year, $1 billion contract (known as "ANET") with the United States Postal Service to provide express and priority mail delivery for the Postal Service beginning January 20, 1993. The incumbent provider is Emery. Defendant Postal Air, formerly known as Kitty Hawk Aircargo, Inc., was awarded the new contract.

This court previously denied a motion by Emery for a temporary restraining order due to the lack of imminent harm. Since that date, Emery has presented new facts to the court, including the communications between Mr. Kalitta and Mr. Cole described in Part II.A., below. Defendants were given an opportunity to reply to Emery's allegations. Emery has now moved for a preliminary injunction.[2]

## II. ANALYSIS.

In determining whether a preliminary injunction should be granted, this circuit has adopted a four-part standard: the moving party must demonstrate that it is likely to prevail on the merits, that it will suffer irreparable injury absent the granting of injunctive relief, that the issuance of an injunction will not cause substantial harm to other persons interested in the proceedings, and that the issuance of an injunction is in the public interest (or at least is not adverse to the public interest). *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.* ("*WMATA*"), 559 F.2d 841, 843 (D.C.Cir.1977). The court finds that, based on the record in this case, Emery has demonstrated all four of the criteria as they are defined in this circuit. The motion for preliminary injunction is therefore granted.

### A. Likelihood of Success.

■ The court is not required to determine that the ultimate success of the movant to "a mathematical probability," particularly when the other factors weigh heavily in favor of the injunction. *WMATA*, 559 F.2d at 843. Nonetheless, the court finds that plaintiffs are likely to be successful in this suit.

■ Plaintiffs have alleged several justifications for holding this contract illegal, including the Postal Service's failure to evaluate risk, an arbitrary and capricious scoring method, improper communications between the Postal Service and Postal Air, and negotiations between the Postal Service and Postal Air after Postal Air had been tentatively selected. Although the court believes that some of these contentions may have merit, one of Emery's allegations is particularly strong. By itself, this allegation satisfies the criteria for likelihood of success on the merits and thereby justifies the granting of the preliminary injunction.

This allegation concerns the communication between Connie Kalitta of AIA (a principal and major subcontractor of Postal Air) and William Cole, an evaluator on the ANET contract (indeed, the team leader of the Maintenance Surveys Team). On May 26, 1992, Mr. Kalitta contacted Mr. Cole about a position with AIA. Mr. Cole immediately wrote Rex M. Maytan, the Contracting Offi-

---

1. At the hearing on the temporary restraining order, the court granted Express One's motion to intervene in Emery's motions for preliminary relief. By implication, positions and motions attributed to Emery are also ascribed to Express One.

2. Further facts are discussed, as necessary, in the opinion.

cer for the ANET contract, "I wish you to be aware of the possibility of my being employed by Kalitta Airlines at some future date that may precede the above contract award dates." Emery's Reply at App. B–1. After seeking legal (and political) advice, Mr. Maytan informed Richard Morris, the Project Manager at Arthur D. Little (Mr. Cole's firm), by letter on June 8, 1992, that "Mr. Cole must be removed from the project if he does not affirmatively reject Mr. Kalitta's invitation." *Id.* at App. B–5.

Mr. Maytan's determination that disavowal was required is correct. Nonetheless, Mr. Cole never disavowed interest in the position. In a letter to Mr. Maytan written by Mr. Morris on June 9, 1992, and countersigned by Mr. Cole, Mr. Cole states that he "will not discuss or negotiate employment ... with Mr. Kalitta ... until September 1992." Emery's Reply at App. B–6. Although Mr. Morris expresses that Mr. Cole does not want to create a conflict of interest situation, and states that Mr. Cole must affirmatively reject any further initiative by Mr. Kalitta if he wants to remain an evaluator, Mr. Cole never affirmatively rejects Mr. Kalitta's first offer. It is apparent that Mr. Cole wanted to keep his options open, particularly after the September 1992 award date, and thus never rejected Mr. Kalitta's offer.

Even though he had previously (and properly) determined that disavowal was required, Mr. Maytan on June 12, 1992, in a memo to J.E. Orlando, notes that he is "inclined to keep [Mr. Cole] on board." Emery's Reply at App. B–8. Mr. Orlando, in a memo dated June 15, 1992, agreed "provided there is no further contact." *Id.* at App. B–9. They give no rational explanation as to why their previous strict standard—that only disavowal would be sufficient to avoid a conflict of interest—need not be followed.

Moreover, on June 21, 1992, Mr. Kalitta again contacted Mr. Cole; again, Mr. Cole did not disavow interest in the position but rather stated that he "would not be available for a personal meeting or further telephone calls until after August 28, 1992." *Id.* at B–10. Although Mr. Cole again notified Mr. Maytan of this communication (and of his failure to disavow interest), Mr. Maytan and Mr. Orlando did not remove him from his position as evaluator. Again, they provide no rational explanation.

The conflict of interest in this situation is patently evident. Mr. Cole and the Postal Service had two options in order to preserve the integrity of the procurement and of Mr. Cole's evaluations: 1) Mr. Cole could affirmatively reject both offers (as Mr. Maytan's letter required); or 2) the Postal Service could remove Mr. Cole from the evaluation board. Neither was done; rather, an individual with two outstanding employment offers from one of the offerors was allowed to evaluate that offeror (as well as the others) provided that he defer further negotiations until after the contract was awarded. Such a circumstance (not to mention the appearance of impropriety it creates) taints the result and violates the Postal Service's own determination (as expressed in the June 8, 1992, Maytan letter). The court determines that the failure either to remove Mr. Cole or to require him to affirmatively reject Mr. Kalitta's offers is irrational.

The defendants rely almost exclusively on *CACI, Inc.–Federal v. United States,* 719 F.2d 1567 (Fed.Cir.1983), for the proposition that these communications do not create a conflict of interest. In that case, a former government official (Stevens) left government service and took a position with a firm (Sterling) competing for a contract with the official's former division. Stevens also discussed with his co-workers in the government, some of whom were evaluators on the contract, possible employment with Sterling.

The court finds that *CACI, Inc.–Federal* does not support defendants' position. First, the Federal Circuit has interpreted *CACI, Inc.–Federal* to "merely prohibit the agency from rejecting the relevant bidder where the facts of the case do not support a finding of an appearance of impropriety." *NKF Engineering, Inc. v. United States,* 805 F.2d 372, 376 (Fed.Cir.1986). As the appearance of impropriety is patently evident here, *CACI, Inc.–Federal* does not apply. In addition, the differences between the cases are numerous. First, in *CACI, Inc.–Federal,* there were no specific jobs in existence, *id.* at 1577; here, a specific position was discussed. Sec-

ond, the offers either were withdrawn or became moot as "the job did not materialize," *id.* at 1578; here, there was neither a withdrawal of the offer by Kalitta or disavowal of the offer by Cole. Finally, any discussions in *CACI, Inc.–Federal* terminated some *sixteen months before* the request for proposal; here, the communications occurred *during* the procurement process and were to be continued after the award. Defendants' contention that *CACI, Inc.–Federal* precludes a finding of conflict of interest is obviously misplaced.

Finally, defendants allege that it is in the public interest not to disqualify evaluators for employment communications of this type; otherwise, any offeror could strike any evaluator merely by offering her a position. The court gives little credence to this argument. Mr. Cole, like any evaluator, could have remained conflict-free simply by disavowing interest in employment with Kalitta. He was unwilling to do so and the Postal Service, despite their initial (and clearly correct) determination that such disavowal was required, did not require him to do so. *See CACI, Inc.–Federal* at 1578.

Based on the egregiousness of the conflict of interest presented by the facts in the record, the court believes that the Postal Service acted irrationally[3] by not either removing Mr. Cole from the evaluation team or requiring Mr. Cole to affirmatively reject Mr. Kalitta's two job offers. Therefore, this allegation alone satisfies the criterion for likelihood on success on the merits.[4]

## B. *Irreparable Injury.*

■ Disappointed bidder cases are common in this circuit, and often the plaintiff, as in this case, seeks to halt the performance of the contract pending a legal determination. Whether the plaintiff demonstrates irreparable injury necessary to support a preliminary injunction in such circumstances is a fact-based process unique to each case before the court.

For instance, in *Diverco v. Cheney,* 745 F.Supp. 739 (D.D.C.1990), the court declined a preliminary injunction because the plaintiff retained the possibility of having the contract cancelled in an administrative appeal, thus making plaintiff's injury uncertain. The court also found no irreparable injury in *Vikonics v. United States,* 749 F.Supp. 315 (D.D.C.1990), even though the plaintiff's stock price and bond rating dropped and it had difficulty raising new capital. In *American Coastal Line Joint Venture v. U.S. Lines, Inc.,* 580 F.Supp. 932 (D.D.C.1983), irreparable injury was absent, even though 72 percent of plaintiff's business was to be lost at the termination of the contract, because plaintiff had an adequate remedy at law. And, in *Inter–Con Securities Systems, Inc. v. Orr,* 574 F.Supp. 250 (D.D.C.1983), the court found no irreparable injury because, even if it were able to disqualify the

---

3. 18 U.S.C. § 208, apparently applicable to Postal Service employees under 39 U.S.C. § 410, addresses conflicts of interest of government employees:

> (a) Except as permitted by subsection (b) hereof, whoever, being an officer or employee of the executive branch of the United States Government, or of any independent agency of the United States, ... participates personally and substantially as a Government officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, in a ... contract ... in which, to his knowledge, he ... or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest—Shall be subject to the penalties set forth in section 216 of this title.

18 U.S.C. § 208(a). Thus, during the period that Mr. Cole was evaluating the offerors, including Kitty Hawk, unless Mr. Cole terminated his negotiation with Mr. Kalitta by disavowing interest in any employment position, he was apparently subject to this section and the civil and criminal penalties of 18 U.S.C. § 216. Moreover, under 18 U.S.C. § 218 and Executive Order No. 12448, 48 F.R. 51281 (Nov. 4, 1983), if Mr. Cole were to be convicted under § 208, the entire ANET contract could be voided by the Postal Service. If these provisions are applicable, disavowal was the *only* proper action, not just the rational course of action. Since this issue has not been fully briefed and it was not addressed at oral argument, the court makes no final determination at this time of the applicability of these provisions.

4. As a result of this finding, the court will defer discussion of plaintiff's remaining allegations until the court addresses the merits of the case in their entirety and counsel have had an opportunity to gain complete discovery and to brief and argue the issues more fully.

awardee, it did not have the power to assign the contract to the plaintiff.

However, in other cases, the court has found that irreparable harm did exist. In *United Power Corp. v. U.S. Defense Mapping Agency*, 736 F.Supp. 354 (D.D.C.1990), plaintiff contested a nine-month contract which clearly violated the procurement terms (the terms required the award go to a small business and the awardee, unlike the plaintiff, did not qualify). Even though plaintiff had the opportunity to petition for G.A.O. review *and* it was not clear that plaintiff would get the contract if the awardee were disqualified, the court found irreparable injury.

Similarly, in *Ace–Federal Reporters, Inc. v. F.E.R.C.*, 732 F.Supp. 10 (D.D.C.1990), the court found irreparable injury where the current provider of stenographic services lost the renewal of the contract to another bidder:

> The change in services in one day would cause irreparable injury to the plaintiff in that plaintiff might be required to lay off employees and yet remain in the position to pick up the contract if it should prevail in its action.

*Id.* at 13. The short delay in the beginning of the new contract pending the resolution of the merits justified the maintenance of the status quo.

Finally, in *Dynalectron Corp. v. United States*, 659 F.Supp. 64 (D.D.C.1987), the court faced a similar situation. Again, the court concluded "that if preliminary relief is not granted, Dynalectron will be fully phased-out of the PRMF operation and will be irreparably injured." *Id.* at 70.

The court finds the latter three cases to be factually similar to the present situation: Emery, the incumbent provider, is faced with being completely "phased-out" on January 20, 1993. Moreover, the harm to Emery is "certain and great[;] ... actual and not theoretical," *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.Cir.1985). Emery faces the loss of revenues and profits it now receives by providing express and priority mail delivery for the Postal Service: the current annual contract is valued at $130 million dollars a year, Emery's Motion at 35. Moreover, the contract is for the unusually long period of ten years, with options to renew.

Emery is also likely to be particularly hurt by the loss of this contract due to the effect this loss will have on Emery's relationship with its primary subcontractor, Ryan International Airlines, 60 percent of whose business is ANET-related. Due to these subcontractor relationships, Emery is also likely to incur significant shut-down costs as well as even greater start-up costs if it eventually is deemed the awardee of the new ANET contract. In addition, Emery faces significant lay-off, capital, and facility costs inherent in closing down and restarting a major transportation network. None of these costs can be recovered from Postal Air or the Postal Service if the contract is in fact awarded to Emery. Moreover, Emery does not have any other adequate remedy at law. When all these factors are considered, this case can easily be distinguished from those in which courts have found no irreparable harm.

Finally, the D.C. Circuit Court of Appeals has addressed the issue of such economic losses in relation to the irreparable harm criterion. Although it is "well settled that economic loss does not, in and of itself, constitute irreparable harm," *Id.*, the court nonetheless distinguishes recoverable monetary loss, which "may constitute irreparable harm only where the loss threatens the very existence of the movant's business," *id.*, from the non-recoverable monetary loss present in this case. If the contract indeed does go to Emery, but only after Emery is phased out on January 20, 1993, Emery will incur damages for which there is no recourse. The *non-recoverable* monetary losses Emery faces are therefore real and present irreparable harms sufficient to satisfy this criterion.

### C. *Harm to Other Parties.*

■ Defendant–Intervenor Postal Air claims that it will suffer increased costs if an injunction is issued by this court. Similarly, the Postal Service claims that it will be injured as it will be forced to continue operating on an unpriced extension to the present Emery ANET contract instead of beginning the new, allegedly more efficient and more

reliable Postal Air contract. Moreover, both defendants claim that delay in the performance of the new ANET contract will make the Postal Service liable to both Postal Air and other suppliers for costs based on non-performance of the contract.

However, the parties have represented that they believe that this case can be handled expeditiously. In addition, the court plans on a very limited discovery period and then a quick resolution of merits of the case, all of which should be completed well in advance of the transition date. Although the court realizes that the defendants would typically be making arrangements for the transition during this period, it finds that the harm this delay would cause would be significantly less than the harm caused to Emery by allowing the unlawful termination of its present contract. Moreover, the cost of stopping this contract at a later date, particularly after the transition date, would cause great harm to all involved, and the court finds that it is in the interest of all parties to resolve this issue now, while the potential cost is significantly below what it will be later.

D. *Public Interest.*

■ Of course, the public has a great interest in ensuring that procurement of contracts is done in a fair and legal fashion. In addition, it is certainly within the public's interest to insure that an appropriate carrier is selected for a ten-year, $1 billion contract. Thus, it is at the very least not adverse to the public interest to have this procurement dispute resolved expeditiously.

III. *CONCLUSION.*

As mentioned above, the court must balance the four factors to determine whether a preliminary injunction is warranted. For the reasons cited above, the court finds that Emery has met each of the four criteria necessary for a preliminary injunction in this circuit. Therefore, Emery's Motion for Preliminary Injunction is GRANTED and an appropriate order shall be issued this date.

1. At the hearing on the temporary restraining order, the court granted Express One's motion to intervene in Emery's motions for preliminary relief. By implication, positions and motions attributed to Emery are also ascribed to Express One.

ORDER

This case came before the court for a hearing on plaintiff Emery Worldwide's[1] Motion for Preliminary Injunction on October 16, 1992. Upon consideration of Emery's Motion, the Oppositions of the Federal Defendant and the Defendant–Intervenor Postal Air, Emery's Reply, Emery's Supplement to its Reply, Postal Air's Surreply, and the Federal Defendants' Response, as well as the arguments of counsel, and for the reasons presented in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1. The United States Postal Service, its officers, agents, and employees, and all other persons in active concert or participation with them, are preliminarily enjoined from authorizing or performing any work under the contract awarded on September 16, 1992, pursuant to solicitation ANET–93–01 and from incurring additional obligations and authorizing expenditures by any contractor of funds for performance of the work on the ANET contract;

2. This preliminary injunction will remain in effect until the conclusion of the hearing on Emery's Application for a Permanent Injunction.

3. Although defendants have not specified what bond should be required, the court finds that a bond in the amount of $250,000 is appropriate and requires Emery to file such bond with the Clerk of Court.

SO ORDERED.