TEAC AMERICA, INC., Plaintiff,

v.

UNITED STATES DEPARTMENT OF the NAVY and Naval Air Systems Command, Corporation, Defendants.

Civ. A. No. 95–0069 PLF.

United States District Court, District of Columbia.

Feb. 3, 1995.

Ronald K. Henry, Washington, DC, for plaintiff.

Suzanne Nyland, Asst. U.S. Atty., Washington, DC, for District of Columbia.

David V. Anthony, Donald G. Featherstun, Washington, DC, for intervenor Precision Echo, Inc.

## OPINION

FRIEDMAN, District Judge.

This is a disappointed bidder case challenging the award of a contract to Precision Echo, Inc., by the United States Department of the Navy and Naval Air Systems Command ("NAVAIR"). The disappointed bidder, TEAC America, Inc., seeks declaratory and injunctive relief to enjoin the Navy and NAVAIR from proceeding with performance of the contract on the ground that the contract award to Precision was in violation of laws, regulations and policies relating to government procurement and the competitive bidding process.

The defendants issued a solicitation or request for proposal ("RFP") for Cockpit Video Recording System ("CVRS") Videotape recorders to be installed in F/A–18 Aircraft. These CVRS recorders are used during F/A–18 flights to help record Head–Up Display information, cockpit digital data indicators, reconnaissance information, and the actions of aircraft such as ground attack engage-

ments and aerial combat. Both Precision and TEAC submitted proposals in response to the RFP outlining the "ruggedized" designs of their respective CVRS recorders. On December 16, 1994, the contract was awarded to Precision, and the following week TEAC filed a timely bid protest with the General Accounting Office. The filing of the protest triggered an automatic stay of the performance of the CVRS contract pending disposition of the protest. *See* 31 U.S.C. § 3553(d)(1); 48 C.F.R. § 33.104(c); 4 C.F.R. § 21.4(b).

On January 6, 1995, defendants provided TEAC with notice that it was in the "best interest" of the United States to override the stay and proceed with performance of the contract with Precision, a lawful decision for the defendants to have made. 31 U.S.C. § 3553(d)(2)(A)(i); 4 C.F.R. § 21.4(b)(1). TEAC thereupon promptly brought this action and sought a temporary restraining order and preliminary injunction. After a brief hearing, the Court concluded that it was unnecessary to consider the motion for temporary restraining order but set an expedited briefing and argument schedule on plaintiff's motion for preliminary injunction. In the meantime, the Court requested the General Accounting Office to "continue to consider this matter and to reach its determination as to the merits of plaintiff's protest as expeditiously as possible." [1]

On January 27, 1995, the Court heard lengthy argument on plaintiff's motion for preliminary injunction from counsel for plaintiff, counsel for defendants and counsel for Precision, which had been granted leave to intervene.

## I. ANALYTICAL FRAMEWORK

■ In determining whether a preliminary injunction should be granted, the moving party must demonstrate that it is likely to prevail on the merits, that it will suffer irreparable injury absent the granting of injunctive relief, that the issuance of an injunction will not cause substantial harm to other persons interested in the proceedings, and

that the issuance of an injunction is in the public interest (or at least is not adverse to the public interest). *Washington Metropolitan Area Transit Comm'n. v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *Express One Int'l, Inc. v. U.S. Postal Service,* 814 F.Supp. 87, 88 (D.D.C.1992). When the other three factors strongly favor interim relief, a court may grant injunctive relief where movant has made out a "substantial case" on the merits rather than having demonstrated a likelihood of success; the necessary level or degree of possibility of success will vary according to the court's assessment of the other factors. *Washington Metropolitan Area Transit Comm'n. v. Holiday Tours, Inc.,* 559 F.2d at 843.

■ In a disappointed bidder case, the ultimate issue on the merits is whether there is a rational basis for the decision made by the contracting agency and whether it acted lawfully. A court may not set aside a federal agency procurement decision if the decision is in "substantial compliance with applicable law and baseline substantive rationality." *Elcon Enterprises, Inc. v. WMATA,* 977 F.2d 1472, 1478–79 (D.C.Cir.1992), *quoting Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973). Thus, on a motion for preliminary injunction, the Court must determine whether the disappointed bidder is likely to prevail in demonstrating that the agency's procurement decision had no rational basis or was the result of a process that involved a "clear and prejudicial violation of applicable statutes or regulations." *Elcon Enterprises, Inc. v. WMATA,* 977 F.2d at 1478. *See also Delta Data Systems Corp. v. Webster,* 744 F.2d 197, 203 (D.C.Cir.1984).

TEAC argues that Precision's proposal failed to comply with the mandatory minimum requirements of the RFP and that NAVAIR impermissibly waived those requirements. Plaintiff contends that Precision offered only a Sony home entertainment unit that could be purchased by any consumer at Circuit City, a unit that was not built to withstand extreme flight conditions of heat,

---

1. The Court has been assured by counsel for the government that the General Accounting Office will issue its decision on or before May 5, 1995.

cold and altitude, that has not been tested to the standards set forth in the RFP, has not flown in any aircraft and must have its entire housing and control panel replaced even to fit on F/A–18 mounts. TEAC maintains that while the Sony equipment offered by Precision is well-suited for the home environment, it is not at all suited to the F/A–18 environment and could not meet a myriad of mandatory requirements of the RFP. As a result, plaintiff maintains that the award of the contract to Precision violated the Navy's own mandatory requirements and thus was unlawful.

The Navy responds by attacking the fundamental premise of TEAC's argument, maintaining that Precision did not propose to supply a "recycled home video cassette recorder." Rather, according to the Navy, both Precision and TEAC submitted proposals outlining "ruggedized" designs of their respective CVRS recorders, although Precision's design incorporated an off-the-shelf tape transport into its ruggedized design. The Navy maintains that this was "a technical, common-sense approach" that was permitted under the terms of the RFP. Furthermore, the Navy argues that both proposals were carefully reviewed for merit by Navy evaluators who measured the proposals against criteria set forth in the solicitation and concluded on the basis of technical merit, price and other relevant criteria that Precision's proposal was superior to TEAC's. In sum, the Navy says that it acted rationally in awarding the CVRS recorder and playback contract to Precision.

The Navy also maintains that TEAC has not and cannot demonstrate that it will suffer irreparable harm if it must await the GAO's promised May 5, 1995, decision on its pending protest, while both the government and the public will be harmed if the Court grants the injunction and orders any delay in the production schedule.

## II. LIKELIHOOD OF SUCCESS ON THE MERITS

TEAC argues first and foremost that Precision's proposal failed to comply with the mandatory minimum requirements of the RFP and therefore that Precision was ineligible for the award of the contract. In its brief, the government responds to virtually all of TEAC's specific arguments with citations to the Administrative Record. At oral argument counsel for Precision provided a seriatim response to nearly every item in dispute. The Court need not review each argument and each response and will not paraphrase or quote from the portions of the Administrative Record that have been designated as "Confidential" and filed under seal pursuant to protective order, portions which include confidential proprietary information from Precision and TEAC, as well as national security and source selection sensitive information of the government's. The Court will summarize the most central of plaintiff's arguments and its findings with respect to them.

■ TEAC asserts that Precision's CVRS recorder violates the RFP's request for a "non-developmental item" because it has not previously been produced or tested. The short answer to TEAC's argument is that the RFP clearly permits proposals that incorporate existing components from several different products (Admin.Record 1147); Precision represented that its CVRS recorder is a new design incorporating existing features from several products. Admin.Record 565. While the RFP prohibits post-award development (Admin.Record 1147), Precision's recorder had been developed prior to the contract award. Precision and the Navy both provided evidence that Precision had successfully "ruggedized" off-the-shelf commercial products before and that Precision's CVRS recorder incorporates design features of a product that has flown successfully on the F/A–18 and other military aircraft in the past. Admin.Record 759–60. The Court finds that the Navy did not violate the "non-developmental item" terms of the RFP.

■ TEAC next asserts that Precision's CVRS recorder does not meet the RFP specifications requiring it to operate under the harsh environmental conditions experienced by F/A–18 Aircraft in flight and has never been tested for performance under these conditions. Specifically, TEAC argues that Precision's recorder cannot operate in all

flight conditions and attitudes or withstand severe temperature ranges, vibration, shock and electro-magnetic radiation. With respect to all of these items, counsel for Precision at oral argument drew the Court's attention to specific pages in Precision's proposal and the Navy's evaluation of that proposal to demonstrate that Precision's product was designed to withstand each of these environmental eventualities and that appropriate testing was performed in advance of Precision's having submitted its proposal. Admin.Record 612, 615, 616–17. The design data described throughout the proposal and the test data submitted with it formed a basis for the Navy's decision to award the contract to Precision. *See* Admin.Record 610. Upon a review of these and other excerpts from the Administrative Record, the Court finds the Navy's technical conclusions with respect to these submissions rational. *See* Admin.Record 610–30.[2]

▆ TEAC also argues that the Precision product is not equipped with proper heating and cooling mechanisms, thermal overload protection, dew sensor equipment or cassette dislodge protection as required by the RFP. Precision pointed out at oral argument, however, that while the tape transport component of the CVRS recorder is not itself equipped with these features, Precision had added circuit cards, electronics and other features to the product in order to meet the RFP requirements. *See* Admin.Record 608, 611. The Court finds that the Navy's conclusion that the Precision CVRS recorder would come properly equipped with features required by the RFP was rational.

▆ TEAC next argues that because Precision does not control production of components purchased from Sony Precision does not meet mandatory RFP requirements governing the reliability and continued availability of its CVRS recorder and cannot provide Integrated Logistics Support ("ILS"), which would guarantee complete maintenance and spare parts support for the product. According to TEAC, Precision therefore cannot en-

sure availability of spare components or parts and interchangeability requirements, and cannot meet the RFP requirements that it be capable of fabricating the products and components.

In response, the Navy notes that the tape transport is just one of several components in the Precision CVRS recorder and that the RFP does not require that every component of the CVRS recorder be produced on-site by the offeror. It also notes that Precision has entered into an agreement with a commercial provider entitling it to buy and stockpile relevant tape transport equipment in the event that the component it is using is discontinued and that Precision's previous successful experience with using other commercial tape transports in its recorders demonstrates that Precision is capable of adjusting as necessary. At oral argument counsel for Precision pointed out that the RFP permits the contractor flexibility if it needs to maintain, repair or replace components. *See* Admin.Record 69. By way of example, he said that Precision could turn to alternative suppliers or enter into a license with another commercial provider or this commercial provider; he also represented that Precision had the capability to manufacture this component itself from scratch. The Court's review of the Administrative Record confirms that the RFP does not require the contractor to manufacture every component in-house or control the source of supply. There are several legitimate options open to Precision in the future if the supplier of the component cannot meet Precision's needs and obligations under the contract.

With this and other technical material before them as a part of the proposal submitted by Precision, along with similar technical and other information submitted by TEAC in its proposal, teams of technical evaluators reviewed and measured the proposals against the criteria set forth in the RFP. The technical evaluators operated separately from the price evaluation team and were not given cost information. The technical evaluation

---

**2.** To the extent that TEAC makes a separate argument that Precision did not provide mandatory design and testing data as required by the RFP, the same pages in the Administrative Rec-

ord demonstrate that design data and test data were included in Precision's technical proposal. *See* Admin.Record at 610–30.

teams recommended a "proposal rating" and "risk rating" for each proposal. The possible proposal ratings were "Exceptional," "Acceptable," "Marginal" and "Unsatisfactory." The possible risk ratings ranged from "Low" to "Medium" to "High." Despite TEAC's assertion that the decision to award the contract to Precision was solely price-driven, the record reflects that the technical evaluation was conducted, and the assignment of ratings assigned, independently of price considerations without the technical evaluators even being aware of the price proposed by each offeror. *See* Admin.Record 546–55.

At the end of the technical evaluation process, the evaluation team leaders for the technical and other teams separately presented their findings and recommendations to a Procurement Review Board responsible for making recommendations regarding source selection. Admin.Record 1053. After discussing the relative merits of each offeror's proposal, the Procurement Review Board adopted the recommended ratings of the evaluation team leaders. Admin.Record 1054. The TEAC and Precision proposals were comparable on technical merit.[3] Admin.Record 1053–54. After then considering a significant discrepancy in price between the two proposals, the Procurement Review Board recommended that Precision receive the contract award. Admin.Record 1054.

■ On the basis of this carefully considered record and upon a review of the relevant portions of the RFP, the evaluation documents and the contract awarded to Precision, and the reasons for that award, the Court cannot conclude that plaintiff has a likelihood of success in demonstrating that the decision to award the contract to Precision was either irrational or not in accord with the applicable statutes and regulations. *See Elcon Enterprises, Inc. v. WMATA,* 977 F.2d at 1478–79; *Delta Data Systems Corp. v. Webster,* 744 F.2d at 200–03.

### III.  IRREPARABLE HARM

■ The irreparable harm inquiry in a disappointed bidder case is not nearly so straightforward as the government suggests

because, as plaintiff points out, in a government contractor case the losing bidder is prevented by law from suing for lost profits. *See M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1304 (D.C.Cir.1971); *General Elec. Co. v. Seamans,* 340 F.Supp. 636, 640 (D.D.C. 1972). Thus, plaintiff maintains that lost profits and economic harm to the disappointed bidder may be a sufficient basis to find irreparable harm and to justify the grant of a preliminary injunction. *See TRW Environmental Safety Systems, Inc. v. United States,* 16 Cl.Ct. 520, 529 (1989) (to show irreparable harm, a plaintiff need only show that "by failing to enjoin it will not be awarded the contract and will lose profits thereto"); *Quality Transport Services, Inc. v. United States,* 12 Cl.Ct. 276, 282 (1987) ("An unsuccessful bidder may show irreparable harm merely by alleging that it will not be awarded the contract and earn the consequent profits thereto.").

The government and Precision respond that a showing of irreparable harm requires something more than "the usual distress of a disappointed bidder." *DOD Contracts, Inc.,* No. 87–2970, 1987 WL 114844, *2 n. 3 (D.D.C. December 1, 1987) (Gesell, J.). They maintain that economic loss alone does not, in and of itself, constitute irreparable harm, citing *Wisconsin Gas Co. v. F.E.R.C.,* 758 F.2d 669, 674 (D.C.Cir.1985), and *Foundation Health Federal Services v. United States,* 1993 WL 738426, 1993 U.S.Dist. Lexis 20069 (D.D.C.1993). They suggest that there must be additional aggravating factors beyond the possibility of lost profits and economic harm, factors such as that the disappointed bidder is the incumbent contractor and/or that it is a small business that would be likely to shut down as a result of the contract award decision. Disputing TEAC's claim that it is indeed the incumbent contractor and pointing out that TEAC is a multi-billion dollar business, the government maintains that such aggravating factors do not exist in this case. *Compare Rainbow Navy, Inc. v. Department of Navy,* 686 F.Supp. 354, 360 (D.D.C.1988).

Defendants and intervenor maintain that the Precision contract is merely a one-year

---

3.  TEAC argues that the scoring was calculated in    error, however.

contract with three one-year options. The government also notes that TEAC is not the incumbent contractor for the F/A–18 CVRS recorder and that TEAC's recent provision of recorders to the Navy was a short-term solution to respond to immediate government needs. Furthermore, the government has assured the Court that the GAO report will be issued on or before May 5, 1995, approximately 26 days before delivery of the first five recorders to be used in testing. Thus, while design meetings and testing, and manufacture of a limited number of playback machines, must proceed between now and May 5, 1995, none of the 486 CVRS recorders and only five of the playback stations required to be produced in 1995 would have been delivered by the time the GAO completes its review. This scenario suggests that most of the CVRS contract would still remain to be performed by the date of the GAO decision.

If the GAO sustains TEAC's protest, TEAC would not be nearly so irreparably harmed as was the case in the Court of Claims cases on which it relies. As in *Diverco v. Cheney*, 745 F.Supp. 739 (D.D.C.1990), plaintiff here retains the possibility of having the contract cancelled or the bidding process reopened as a result of the imminent GAO decision, thus making plaintiff's injury speculative or at most minimal. *Compare Baird Corp. v. Marsh*, 579 F.Supp. 1158, 1160–61 (D.D.C.1983) (intervening events threatened to deny plaintiff any meaningful opportunity for GAO review; by the time the GAO determined the merits of the protest it was likely to be impossible to re-bid the contract or award it directly to plaintiff). Nor can the Court conclude that if preliminary relief is not granted plaintiff will be "fully phased out" of the government's operations and thereby irreparably injured. *Cf. Dynalectron Corp. v. U.S.*, 659 F.Supp. 64, 70 (D.D.C. 1987).[4]

▮▮▮▮ As a practical matter, whether the plaintiff in a disappointed bidder case can demonstrate the irreparable injury necessary to support the grant of a preliminary injunction "is a fact-based process unique to each case before the Court." *Express One International, Inc. v. U.S. Postal Service*, 814 F.Supp. at 90. In this case, the Court has found it unlikely that plaintiff will succeed on the merits of demonstrating that the Navy's decision to award the contract to Precision was either irrational or illegal. With neither a likelihood of success or even a substantial case being presented, the burden on plaintiff of showing irreparable harm therefore is greater than it might be in the ordinary case. *Washington Metropolitan Area Transit Comm'n. v. Holiday Tours, Inc.*, 559 F.2d at 843. Plaintiff has failed to show that it will be significantly harmed in the absence of an injunction between now and May 5, 1995.

## IV. HARM TO OTHERS

The Navy maintains, and plaintiff has not really demonstrated otherwise, that the failure to properly outfit new F/A–18 Aircraft on schedule would interfere with the aircraft's schedule to deploy to Bosnia in October 1995. The Court is advised that the Navy intends to equip the pilots in October 1995 with new F/A–18's currently rolling off the production line, which aircraft are expected to be superior to previously manufactured F/A–18's. Training on these new F/A–18's with CVRS recorders installed must commence in June of 1995 in order to meet the deployment date of October 1995 and in order to permit the pilots to train effectively for the Bosnia mission. *See* Admin.Record 526–27. The Navy maintains that this will not be possible if Precision's performance contract schedule is delayed by a court-imposed injunction. The Court finds this argument persuasive.

## V. PUBLIC INTEREST

Not surprisingly, plaintiff argues that the public interest lies in protecting the integrity and fairness of the government procurement process and that that interest supports the issuance of an injunction. This argument,

---

4. Where a federal agency overrides the stay provision of the Competition in Contracting Act, the GAO will not consider the cost of terminating, recompeting or reawarding the contract in making its recommendation on the bid protest. 31 U.S.C. § 3554(b)(2); 4 C.F.R. § 21.6. Plaintiff argues that any performance by Precision before May 5, 1995 will nonetheless deplete the budget allocated to CVRS recorders, but plaintiff has not offered any evidence of this eventuality.

however, is inevitably tied to plaintiff's likelihood of success on the merits. Having concluded that plaintiff is not likely to succeed because the Navy's decision appears rational and in conformity with law, the public interest in protecting the integrity and fairness of the procurement process becomes a non-issue. As the government points out, given TEAC's failure to demonstrate its likelihood of success in showing any improprieties in the procurement process, the only public interest here is in ensuring that the Navy and Marine F/A–18 pilots are equipped with the best available CVRS recorders in the new and improved F/A–18 Aircraft as they venture into Bosnia and other troubled areas of the world in the fall of 1995 and beyond.

## VI. CONCLUSION

The Court has concluded that plaintiff is unlikely to succeed on the merits of demonstrating that the Navy's decision was irrational or illegal. In balancing this with the other three factors relevant to determining whether a preliminary injunction is warranted, the Court concludes that TEAC has failed to demonstrate that the balance of the equities favors the grant of a preliminary injunction in this disappointed bidder case. Therefore, TEAC's motion for preliminary injunction is DENIED and an appropriate Order shall be issued this date.

The United States General Accounting Office is requested to continue to consider this matter as expeditiously as possible so that it may reach its determination of the merits of plaintiff's protest and issue an advisory opinion for the benefit of the Court on or before May 5, 1995, as the government represented that it would. In order to ensure that the GAO proceedings are completed by May 5, 1995, the parties are directed to meet and confer within seven days of the issuance of this Opinion in order to fashion an expedited report and comment schedule for the GAO proceedings.

## ORDER

This matter came before the Court for argument on Plaintiff's Motion for Preliminary Injunction on January 27, 1995. Upon consideration of the memorandum in support of Plaintiff's motion, Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction, Plaintiff's Reply, Memorandum of Intervenor Precision Echo, Inc. in Opposition to Plaintiff's motion, the "Confidential" and sealed, as well as the unsealed, portions of the Administrative Record, the materials submitted to the Court during oral argument, and the argument presented in open Court by counsel for Plaintiff, for Defendants and for Intervenor, and for the reasons stated in the Court's accompanying Opinion, the Court will deny Plaintiff's motion.

In order to ensure that the GAO proceedings in this matter are completed by May 5, 1995, the Court will direct the parties to meet and confer within seven days of the issuance of this Order in order to fashion an expedited report and comment schedule for GAO proceedings. The United States General Accounting Office is requested to continue to consider this matter as expeditiously as possible so that it may reach its determination of the merits of plaintiff's protest and issue an advisory opinion for the benefit of the Court on or before May 5, 1995. Accordingly, it is hereby

ORDERED that Plaintiff's Motion for Preliminary Injunction be and hereby is DENIED; and it is

FURTHER ORDERED that, within seven days of the issuance of this Order and accompanying Opinion, the parties shall meet and confer in order to fashion an expedited report and comment schedule in order to ensure that the GAO proceedings will be completed by May 5, 1995.

SO ORDERED.